MERCHANTS' INS. CO. OF NEWARK, N. J., v. BUCKNER et al.

(Circuit Court of Appeals, Sixth Circuit. November 13, 1899.)

No. 703.

1. BILLS OF EXCEPTIONS—ALLOWANCE AT SUBSEQUENT TERM.

Where a motion for a new trial is duly filed, but not acted upon, at the trial term, but the court, by its order staying execution, manifests its purpose to keep control of the judgment until the motion is determined, a bill of exceptions may be settled and filed at a succeeding term, at which the motion is disposed of, or within such time as the court may then allow.

2. LIBEL AND SLANDER—DISTINCTION BETWEEN—ACTIONABLE LIBEL.

Entirely different rules govern actions for libel and slander, and words which do not technically charge a criminal offense, and, if spoken, would not be actionable without allegation and proof of special damages, are libelous and actionable per se when written or printed and published, where they seriously reflect upon the character and integrity of the person of whom they are written, and tend to subject him to loss of public confidence and respect.

3. SAME—WORDS LIBELOUS PER SE.

A letter, written and mailed, on behalf of defendant, a corporation, by one of its managing officers, and published by the recipient, stating that "we feel that the firm of [plaintiffs] are withholding money collected for and belonging to this company, and that the criminal laws provide for their action," and that the company has demanded the payment by plaintiffs of the "amount they robbed of company funds in their possession," constitutes a libel, and is actionable per se.

4. SAME—LETTER CONTAINING LIBELOUS MATTER — LIABILITY OF WRITER FOR PUBLICATION.

One who writes and mails a letter containing libelous matter is responsible for such subsequent publication of the libel as is the natural and probable consequence of his own act in putting the letter in circulation.

5. SAME—PRIVILEGED COMMUNICATION—BUSINESS LETTERS.

A letter written by defendant on a matter of business in which defendant was interested, and in reply to a communication from the person to whom it was addressed, is not a privileged communication, so far as relates to charges therein made derogatory to the character of third persons, which charges were not necessary to a statement of defendant's position in regard to the business to which the correspondence related.

6. SAME—ACTION FOR LIBEL—INSTRUCTION AS TO DAMAGES.

In an action to recover damages for a libel contained in a letter, the jury should be confined by the instructions, in estimating damages, to the effect of such circulation of the libel as they shall find to have been the natural consequence of the act of the defendant in sending the letter to the person to whom it was addressed.

In Error to the Circuit Court of the United States for the District of Kentucky.

George S. Steere, for plaintiff in error.

Reuben A. Miller and George W. Jolly (John Feland, of counsel), for defendants in error.

Before TAFT, LURTON, and DAY, Circuit Judges.

DAY, Circuit Judge. This cause was begun in the circuit court of the United States for the district of Kentucky by the plaintiffs, Buckner & Co., to recover damages from the defendant insurance company for alleged libel. The company, organized under the laws of the state of New Jersey, was engaged in carrying on the business of

fire insurance in the state of Kentucky. Its manager was one R. H. Garrigue, whose residence was in Chicago. In 1895 Buckner & Co., it is alleged, were regularly appointed agents for the company, with full authority to solicit and write fire insurance for it in Hopkinsville, Ky., and vicinity, with the assurance and promise of defendant, through its agent, that they were to be sole agents of said company in said locality; that defendant would not write policies of insurance in that territory, except through them; and that plaintiffs were to receive commissions on all policies so written. The defendant denied that this was the contract, and claimed that its agent who made the contract notified Buckner & Co. that he had no authority to grant them the exclusive privilege of writing business at Hopkinsville, but that the company protected its agents in the matter of overhead writing. The company claimed that Garrigue, the manager, having discovered that a policy covering property at Hopkinsville had been written in New York, notified Buckner & Co. thereof, and thereupon canceled the same and returned the premium to the insured. Buckner & Co. claimed that they were entitled to a commission on this policy, the same as if written by themselves. This claim was disputed. Buckner & Co. retained $22.50 of money of the company which was in their hands. There was at this time a local board composed of the respective agents of the companies doing business in the town. This board regulated the rates of insurance in their territory. It was subordinate to the Kentucky & Tennessee Association, which association regulated the rates of the board. The local board excluded plaintiff in error because of its alleged misconduct in the matter of Buckner & Co., and imposed a fine upon Mercer & Mercer, who had been appointed local agents of the company in the place of Buckner & Co. After considerable correspondence, a letter was written by the company in response to one from the secretary of the local board. This letter is the basis of the action, and is as follows:

"Chicago, Ill., June 6, 1896.

"Mr. J. S. Moore, Secretary, Hopkinsville, Ky.—Dear Sir: We have asked our agents, Messrs. Mercer & Mercer, to return to you the inclosed voucher and this letter. In order that there may be no mistake as to the position of the Merchants' Insurance Company of Newark, beg to advise that this company will never join the Hopkinsville board, as now constituted, until full reparation has been made for the outrages committed against us by the official acts of that body. The notice of Secretary Ashbrook, of the Kentucky and Tennessee Association, that the 'disabilities imposed' against this company by your board had been removed, does not suffice. We have made our demand, and will insist upon full compliance before associating ourselves with the board again; and we desire to give notice to the Hopkinsville board that we will hold any or all of them to the full extent of the Kentucky laws, for whose protection and under which we transact our business in your state, should any attempt be made to molest our property. We do not waive any claim for damages we may have for previous actions by the board or its individual members in endeavoring to force this company from your city, neither do we make any threats as to our future course. We feel that the firm of Buckner & Co. are withholding money they collected, belonging to this company, and that the criminal laws provide for their action. We are advised that the board collected a fine from Mercer & Mercer for taking the agency of this company. We know that the board, while in session, refused to meet our representative. We know that fines were imposed against this company without notice, trial, or hearing. We are advised that such unpaid fines have been rescinded as to the company. We are

advised that the collected fine against our agents has not been remitted. We know that our agency supplies were sent, by the official action of the board, to this office, without our consent, and that we were put to the expense of paying the express charges both ways on the package, as well as the additional expense of sending a representative to Hopkinsville to replace the package in the office that your board forcibly caused to surrender them. We have demanded for these outrages a full and complete apology; a remission and repayment of all fines collected or imposed for any act of this company or its representatives; the payment by Buckner & Co. of $22.50, the amount they robbed from company funds in their possession, on a false claim for commissions on business that they did not transact; and an unanimous invitation to join the board. Until the foregoing demands have been fully complied with, we positively decline to contribute one cent, or allow the name of the company on its roll of membership.      Yours, truly,      R. H. Garrigue, Manager."

Upon the trial, verdict and judgment were rendered in favor of Buckner & Co.

1. A preliminary question is made by the defendant in error as to the allowance of the bill of exceptions. It appears that a judgment of $3,500 in favor of Buckner & Co. was rendered on January 28, 1898. On the same day, plaintiff in error filed a motion for a new trial, and in reference thereto the following order was made by the court:

"This day came again the parties, and defendant filed a motion for a new trial herein; and it is ordered that execution do not issue upon the judgment in this case until the further order of this court, and, on motion of defendant, it is allowed sixty days in which to tender and file a bill of exceptions herein."

The motion for a new trial was not disposed of until the following June term of the court. On the 9th day of June the court, having considered the motion of the defendant for a new trial, found the verdict of the jury in favor of the plaintiffs to be excessive, and ordered that a new trial be granted unless the plaintiffs, by a proper writing, remit $1,500 thereof. On the same day defendant was allowed 60 days in which to file a bill of exceptions, to which order plaintiffs excepted. It is urged that, in the absence of any rule to the contrary, a bill of exceptions must be filed during the term at which the trial was had. The defendant, having failed to file the bill within the time limited, is not, it is claimed, within the rule which permits the filing thereof where the motion for a new trial has been continued to a subsequent term. The general rule as to the allowance of bills of exceptions is thus stated by Mr. Justice Gray (Bank v. Eldred, 143 U. S. 298, 12 Sup. Ct. 452, 36 L. Ed. 162):

"By the uniform course of decision, no exceptions to rulings at a trial can be considered by this court, unless they were taken at the trial, and were also embodied in a formal bill of exceptions presented to the judge at the same term. or within a further time allowed by order entered at that term, or by standing rule of court, or by consent of parties; and, save under very extraordinary circumstances, they must be allowed by the judge and filed with the clerk during the same term. After the term has expired, without the court's control over the case being reserved by standing rule or special order, and especially after a writ of error has been entered in this court, all authority of the court below to allow a bill of exceptions then first presented, or to alter or to amend a bill of exceptions already allowed and filed, is at an end. U. S. v. Breitling, 20 How. 252, 15 L. Ed. 900; Muller v. Ehlers, 91 U. S. 249, 23 L. Ed. 319; Jones v. Machine Co., 131 U. S. Append. 150, 24 L. Ed. 925; Hunnicutt v. Petyon, 102 U. S. 333, 26 L. Ed. 113; Davis v. Patrick, 122 U. S. 138, 7 Sup. Ct. 1102, 30 L. Ed. 1090; Chateaugay Ore & Iron Co., Petitioner, 128 U. S. 544, 9 Sup. Ct. 150, 32 L. Ed. 508."

In cases where a motion for a new trial is regularly filed, and not acted upon, there seems to be no necessity for a presentation of the bill, as the granting of the motion will render it entirely unnecessary so to do. It has been the practice in this circuit to permit the bill to be filed after the motion has been overruled, although such action be had at a subsequent term of court, and we see no reason to depart from this practice in this case. When the motion for a new trial was filed, it was ordered that defendant be granted "sixty days in which to tender and file a bill of exceptions," but the purpose of the court to reserve control of the judgment until the motion for a new trial should be acted upon is shown in the order withholding execution until further order of the court. At the June term, when the court passed upon the motion, a further time of 60 days was granted to the plaintiff in error within which to file a bill of exceptions. The bill was presented within this time, and we are of the opinion that it was in time, and properly allowed.

2. Did the court err in overruling the demurrer to the amended petition? This pleading sets forth, in substance, that during the year 1895 the plaintiffs were co-partners engaged in carrying on business as agents for various fire insurance companies in Hopkinsville, Ky.; that defendant, the Merchants' Insurance Company of Newark, N. J., was during said year, and prior thereto, an insurance company chartered to transact business in the United States, and to sue and be sued as such corporation; that the home office of said company was at Newark, N. J., with a branch office in Chicago, from which it carried on business in the Southern and Western states, under the control and management of R. H. Garrigue, the duly-authorized manager of the company. The plaintiffs aver that in March, 1895, they were the duly-appointed agents of said company, with authority to solicit and write policies of fire insurance in the city of Hopkinsville, Ky., and vicinity. Plaintiffs allege the promise of the defendant that they were to be the sole agents of the company in said locality; that said company would not write policies of insurance in their territory, except through the agency of the plaintiffs; that it would not cut rates in said locality, but that rates should be fixed and uniform; plaintiffs to receive a commission of 15 per cent. on all business done for defendant in said locality or territory. It is further stated that many other fire insurance companies were doing business in the city of Hopkinsville; that the agents of said companies, including plaintiffs, were organized, with the knowledge and consent of their respective companies, as a local board, to regulate and render uniform the business of fire insurance in said locality, with certain rules and regulations for the transaction of business; that one Jack S. Moore was secretary of said local board. They further state that in the year 1895, while plaintiffs were acting as the authorized agents of defendant in the city of Hopkinsville, Ky., said company, without plaintiffs' knowledge or consent, wrote and delivered a policy on the Hotel Latham, in said city, at a less rate than the regular charges the plaintiffs were authorized to charge for said insurance, and less than the regular rates charged, which was in bad faith, and viola-

tion of the promise and assurance of the defendant to the plaintiffs, and of the custom of insurance agents in that locality; that some time thereafter the plaintiffs ascertained said facts, whereupon they insisted upon said defendant's paying them the commission, and notified the company that they would claim $22.50, the regular commission on the premium which should have been paid on said policy, which commission defendant refused to allow, wherefore plaintiffs, in settlement with defendant, retained $22.50 from defendant's money, which retention was the result of considerable correspondence between plaintiffs and defendant, resulting in no agreement as to plaintiffs' right to retain said money; that said local board of underwriters imposed certain "disabilities" upon defendant on account of the cutting of rates in that locality without the knowledge of said agents, and without allowing its agents the regular commission on said business; that said board also imposed a fine upon Mercer & Mercer for taking the agency after the action of the company had been condemned; that R. H. Garrigue, defendant's authorized and acting manager, in the regular course of his official business wrote a letter, dated Chicago, Ill., June 6, 1896, directed to Jack S. Moore, secretary, which letter was mailed to him, and duly received by him, at Hopkinsville, Ky.; that said letter contained remonstrances against said local board, and set forth various grievances against said board; that said letter contained the following false, malicious, and libelous statements of and concerning the plaintiffs, namely, "We feel that the firm of Buckner & Co. are withholding money collected for and belonging to this company, and that the criminal laws provide for their action,"—thereby meaning falsely and maliciously to charge the plaintiffs with a violation of the criminal laws of Kentucky. It is further stated in said letter: "We have demanded for these outrages a full and complete apology; a remission and payment of all fines collected or imposed for any act of this company or its representatives; the payment by Buckner & Co. of $22.50, the amount they robbed of company funds in their possession, on a false claim for commissions on business they did not transact; and an unanimous invitation to join the board," —meaning thereby to charge the plaintiffs with the offense of robbing, and with dishonest and criminal conduct. A copy of the letter is attached. Plaintiffs further aver: That they were the successors to Buckner & Hays, former agents of defendant, and assumed all liabilities of said firm, and were entitled to all uncollected fees and commissions due said firm. That prior to said letter plaintiffs were esteemed as good and honest men, and reliable insurance agents. The chief officers of said company, by authority of said company, falsely and maliciously wrote of and published of and concerning plaintiffs the false and libelous statements contained in said letter. Said letter was received by said Moore, and its contents were made known and published by said Moore, as was intended by said defendant, in the city of Hopkinsville, whereby they were greatly mortified and damaged in the sum of $25,000. Defendant caused proceedings to be entered against plaintiffs for the recovery of said sum of $22.50, and the court found for plaintiffs. The petition concludes with prayer for judgment.

In the consideration of this assignment of error, it must be remembered that this is an action for libel, not for slander, and that entirely different rules apply to the two classes of actions. It may be admitted to be the rule in slander, where the words are merely spoken, that, to be actionable, in the absence of special damage, the utterances complained of must, in cases like the present, impute to the complainant the commission of a criminal offense. The rule is different in actions for libel. In State v. Smiley, 37 Ohio St. 30, Chief Justice Boynton, in discussing the difference between the rules applicable to words spoken, which constitute slander, and written defamation, which constitutes libel, cites the cases and states the general rule upon the subject in the following language:

"In Watson v. Trask, 6 Ohio, 531, it was said that 'a libel in reference to individual injury may be defined to be a false and malicious publication against an individual, either in print or writing, or by pictures, with intent to injure his reputation, and to expose him to public hatred, contempt, or ridicule.' Words of ridicule only, or of contempt, which merely tend to lessen a man in public esteem or to wound his feelings, will support a suit for libel, because of their being embodied in a more permanent and enduring form, of the increased deliberation and malignity of their publication, and of their tendency to provoke breaches of the public peace. In Tappan v. Wilson, 7 Ohio, 190, it was further said that if the 'tendency of the publication,' being malicious, 'is to degrade and lessen the standing' of the person concerning whom the publication is made, it is a libel. The general current of authority is to the same effect; holding that although the matter published might not, without averment and proof of special damage, be actionable if only spoken, yet, if published, and it be of a character which, if believed, would naturally tend to expose the person concerning whom the same was published to public hatred, contempt, or ridicule, or deprive him of the benefits of public confidence or social intercourse, such publication is a libel, and an action would lie therefor, although no special damage is alleged. Tillson v. Robbins, 68 Me. 295; Dexter v. Spear, 4 Mason, 115, Fed. Cas. No. 3,867; Smart v. Blanchard, 42 N. H. 151; Adams v. Lawson, 17 Grat. 250; McGregor v. Thwaites, 4 Dowl. & R. 695; Thorley v. Kerry, 4 Taunt. 355; Villers v. Monsley, 2 Wils. 403; Starkie, Sland. & L. § 153; Rosc. N. P. Ev. 791; 2 Whart. Cr. Law, § 1598. In Cropp v. Tilney, 3 Salk. 226, Lord Holt said: 'Scandalous matter is not necessary to make a libel. It is enough if the defendant induces an ill opinion to be had of the plaintiff, or to make him contemptible or ridiculous.' In Shipley v. Todhunter, 7 Car. & P. 680, Tindal, C. J., said that 'any written communication that bears on the face of it any charge, or which tends to villify another, is a libel.' In Woodward v. Dowsing, 2 Man. & R. 74, it was said that 'any written publication which tends to disgrace is actionable.' And in Dexter v. Spear, supra, it was said by Judge Story that 'any publication, the tendency of which is to degrade or injure another person, or bring him into hatred, ridicule, or contempt, or which accuses him of a crime punishable by law, or of an act odious and disgraceful in society, is a libel.' In Bell v. Stone, 1 Bos. & P. 331, the action was publishing of the plaintiff that he was a 'villain.' The plaintiff failing to prove a special damage, the court directed a verdict for the defendant. Counsel, however, contending that, inasmuch as the charge was in writing, it was actionable without proof of special damage, the court asked the jury what damages they would give, supposing the plaintiff entitled to recover in point of law. They answered, 'One shilling.' Subsequently a rule was granted on the defendant to show cause why the verdict in his favor should not be set aside, and a verdict entered for the plaintiff; and upon the hearing the court expressed themselves 'clearly of the opinion that any words written or published, throwing contumely on the party, were actionable,' and ordered the rule to be made absolute. These authorities abundantly show that in many instances a marked distinction exists between words spoken and the same words written and published; and that words written or printed, and published, imputing to another

any act, the tendency of which is to disgrace him, or to deprive him of the confidence and good will of society, or lessen its esteem for him, are actionable per se, and consequently lay the foundation for an indictment under the statute."

Applying these principles to the language used in the letter under consideration, we find the charge that plaintiffs are withholding money, collected by them, belonging to the company, and that the criminal laws provide for their action; and the company, by its agent, says:

"We have demanded payment by Buckner & Co. [plaintiffs] of $22.50, the amount they robbed of company funds on a false claim for commission on business which they did not transact."

It seems clear that this language is sufficient to constitute a libel. It may be true that a crime is not charged in technical language, or with sufficient certainty to support an indictment. It is, however, directly charged that the plaintiffs have been guilty of conduct for which the criminal laws provide, and are withholding money, collected by them, belonging to the insurance company, under a false claim for commissions on business they did not transact. Here is an expression of the writer's opinion that the plaintiffs' conduct came within the reach of the criminal law, and that they wrongfully appropriated moneys intrusted to their care, under the pretense of a claim for commissions upon business which they never transacted. These charges certainly reflect in the most serious manner upon the integrity, character, and business standing of the plaintiffs. Such conduct would show them wholly unfit to be intrusted with any business, and meriting the aversion of honorable men. Men guilty of such conduct would be unworthy of the confidence and good will of society. The circulation of charges of so serious a nature tends to destroy that reputation and confidence to which all honorable men are entitled in the community. Such dishonest conduct, though technically not criminal, would lessen the esteem of society, and tend to deprive plaintiffs of their social standing. The petition contains all that is necessary to the statement of a cause of action, and, for the reasons stated, the words charged are libelous per se, from which the jury might imply malice, and are actionable without averment of special damage. The other averments are sufficient to warrant the overruling of the demurrer, and there was no error in the action of the court in that behalf.

3. The court below sustained the demurrer to the 9th defense, which is as follows:

"Ninth. Defendant, further answering, states that the said letter was written by said Garrigue to said Jack S. Moore as secretary of said local board at Hopkinsville, and that said Jack S. Moore and each and every member of said board were all familiar with the facts referred to in said letter, and that said Jack S. Moore and each and every member of said board knew that said letter did not charge a violation of the criminal laws of the state of Kentucky, or the crime of robbery, or any dishonest or criminal conduct, and did not understand said letter to charge the plaintiffs with being guilty of the crime of robbery or any crime whatever, or any dishonest or criminal conduct; and said Moore and each and every member of said board knew that said letter referred to the transactions hereinbefore set forth, and so understood said letter. Defendant further states that said letter was written to said Moore as secretary of

said local board, and that said local board consisted of the agents of the various insurance companies doing business in the city of Hopkinsville, Kentucky, and its vicinity, and that said letter was written in regard to transactions upon which the board had acted and was acting, and which directly concerned the defendant, and in which the defendant was directly interested, and that said letter was a privileged communication, and that it was written without any malice or ill will on the part of the defendant or any of its agents, and in an honest belief that the statements therein contained were true, and without any motive or intention to injure the plaintiffs."

## And the amendment relating thereto is:

"And for amendment, in addition to the allegations contained in the ninth paragraph, defendant says that said local board at Hopkinsville was maintained and supported by the various insurance companies doing business in that city, and that defendant contributed and paid its proportion of all the sums necessary to support and maintain said board. Defendant says that said local board claimed and exercised the authority and power to fix and establish the rates of insurance and the premiums to be charged by the defendant and other companies for business done in said city; to superintend and oversee the local recording agent of the defendant as to the amount of premiums he should receive for defendant; to furnish to defendant's said agent the tariff rates for all business that might be secured by defendant in said Hopkinsville agency. Defendant says that said board claimed and exercised the further right to fine or expel the local agents of the companies belonging thereto, and deprive them of the privileges of membership in said organization, and further to declare that no member should do business with any company refusing to adhere to its rules; and defendant says that the membership in said board is absolutely necessary and essential to the proper conduct of its business, and that it could not transact the same without the privileges of membership in said organization. Defendant further says that said local board is a subordinate branch of an organization known as the Kentucky & Tennessee Board of Fire Underwriters, and is under the control and supervision of the Kentucky & Tennessee Board, and that it protested against said local board's treatment of this defendant, and demanded a rescission of the sentence imposed by said local board upon defendant."

This answer is twofold in its character. In the first place, it alleges that those to whom the letter was addressed (the secretary and local board) fully understood the alleged libelous statements, and knew the nature and character thereof, and that the said letter did not charge any violation of the criminal laws of the state of Kentucky, or any crime of robbery, or any dishonest or criminal conduct, and they did not understand the letter to charge the plaintiffs with being guilty of the crime of robbery, or any crime whatever, or any dishonest or criminal conduct, and said Moore and each and every member of said board knew that said letter referred to the transaction set out in the answer. In support of this ground of defense, authorities are cited holding, in effect, that where persons, in whose hearing slanderous words are uttered, understand the words to refer to innocent transactions, or those not criminal, no action for slander can be maintained. Examples of this class of cases are found in Hayes v. Ball, 72 N. Y. 418, and Carmichael v. Shiel, 21 Ind. 66. In the former case the words imputed were, "When he [the plaintiff] was highway commissioner, he stole $1,000 from the town." Defendant attempted to show that, when he held the office of highway commissioner, he failed to procure vouchers for $1,000 which came into his hands. Chief Justice Church, in speaking of the ruling of the court below, said:

"If it had appeared that when the words were spoken they were accompanied with such an explanation as would make it clear that they referred to an innocent transaction, or to a transaction which, in law, could not have constituted larceny, the motion for a nonsuit should have been granted. So if it had appeared that all of the persons who were present understood from the facts which they knew, or had otherwise learned, that the words referred to a transaction which could not, in law, constitute larceny, the same result would follow."

In the Indiana case, plaintiff sued to recover from defendant for language charging her with stealing. Plaintiff was in the service of defendant, who was a landlord in a hotel in Indianapolis, and while in such service she broke dishes belonging to the house. The landlord deducted the value of the dishes from her wages. The plaintiff then carried away the fragments of the dishes, openly claiming them as her property. Defendant then went before the justice, and instituted proceedings against her. Upon the trial the plaintiff was discharged. Immediately after the discharge, and while the parties were still in the court room, defendant advanced towards plaintiff and said, "Now, I want you to bring back the dishes you stole from my house." The court held that, these words being spoken in the presence of those who heard the evidence of the late trial, and who knew that the transaction referred to was not criminal, but innocent, or a trespass, at most, the action for slander could not be maintained. The knowledge of the witnesses was such that no charge of crime was conveyed to them in the utterance of the defendant. These and similar cases are cited in support of the contention of the plaintiff in error. We are at a loss to perceive their application to the facts in this case. In cases of libel, where the writing is put into circulation, it may, as a natural and probable consequence of publication, reach persons for whom it was not intended. The petition in this case charges that said letter was received by said Moore, and its contents published and made known by him, as was intended by said defendant, in the city of Hopkinsville, where the plaintiffs reside. This allegation is not denied in this ground of defense. No other allegation of the answer is incorporated, by reference, into this ground of defense; but, looking at the eleventh paragraph of the answer, which covers this matter of publication by defendant, we find it stated:

"Eleventh. States that the only publication of said letter by this defendant was the writing and mailing thereof to said Jack S. Moore, and the reading of the same by the said Moore as secretary of the said board, and that said Moore was not authorized to make the contents of said letter known to any one else, and that this defendant is not responsible for any damages which plaintiffs may have sustained by the acts of the said Moore; and denies that said plaintiffs have sustained any damages whatever."

The latter part of this paragraph is mere conclusion, and it may be true that the defendant gave no direct authority to Moore, secretary of the local board, to publish the alleged libel. Still, it would be liable in law for such publication as is the natural consequence of putting the letter in circulation. If the publication by Moore, referred to in this petition, was found by the jury to have been the natural and probable consequence of defendant's publication, then the defendant would be responsible for the same. This rule is rec-

ognized in Townsh. Sland. & L. § 158. In Miller v. Butler, 6 Cush. 71, where the suit was brought for circulation of an alleged libelous letter, it is said in the syllabus:

"The responsibility of the writer of a private letter for the publication of a libel contained therein is not limited to the consequences of a communication of it to the person to whom the letter is addressed, but extends to the probable consequences of thus putting it in circulation."

To the same effect is the language of Chief Justice Gilfillan, of the supreme court of Minnesota, in Zier v. Hofflin, 33 Minn. 66–68, 21 N. W. 862:

"Now, although one who publishes a libel is not to be held responsible for an independent wrong done by a third person, though connected with the libel, he is responsible for the natural consequences of his own wrong act, although the wrongful act of a third person may concur in bringing about such consequences. If it were a natural consequence of defendant's publication through the newspaper that some evil-disposed person should send a copy of the paper, or the item cut from the paper, to some one whom defendant had not thought of its reaching, he would be liable for it, as the consequences of his own wrong. Townsh. Sland. & L. § 158; Miller v. Butler, 6 Cush. 71. It was for the jury to say whether sending the postal card by a third person was a natural consequence of defendant's publication in the newspaper."

It was therefore a question for the jury to determine whether such publications as the plaintiffs might properly prove under the statements of the petition were the natural consequences of sending the letter to Moore, and thus putting it in circulation. We are therefore of the opinion that the court did not err in sustaining the demurrer to this branch of the defense.

There is the further undertaking to plead in this paragraph of the answer that the communication in question was of a privileged character. It is alleged that the letter was written to Moore as secretary of said local board; that said board consisted of the agents of the various insurance companies doing business in Hopkinsville, Ky.; that said letter was written in regard to certain transactions concerning which the board had acted and was acting, and which directly concerned the defendant, in which it was interested, and was written without malice or ill will on the part of the defendant or its agents, and in the belief that the statements were true, without any desire to injure the plaintiffs. It is not claimed that this communication comes within the class known as "absolutely privileged," but that it is, rather, entitled to a qualified privilege. Privileged communications of this character may be said to comprehend all bona fide statements in performance of any duty, whether legal, moral, or social, even though of imperfect obligation, when made with a fair and reasonable purpose of protecting the interest of the person making them, or the interest of the person to whom they are made. Townsh. Sland. & L. § 209; Taft, C. J., in Publishing Co. v. Hallam, 8 C. C. A. 201, 59 Fed. 540. The question of qualified privilege was discussed in the supreme court of the United States in the case of White v. Nicholls, 3 How. 266, 11 L. Ed. 591. Mr. Justice Daniel sums up his conclusions as follows:

"The investigation has conducted us to the following conclusions, which we propound as the law applicable thereto: (1) That every publication, either by writing, printing or pictures, which charges upon or imputes to any person that

which renders him liable to punishment, or which is calculated to make him infamous or odious or ridiculous, is prima facie a libel; and implies malice in the author or publisher towards the person to whom such publication is made. Proof of malice, therefore, in the cases just described, can never be required of the party complaining, beyond the proof of the publication itself. Justification, excuse, or extenuation, if either can be shown, must proceed from the defendant. (2) That the description of cases recognized as privileged communications must be understood as exceptions to this rule, and as being founded upon some apparently recognized obligation or motive, legal, moral, or social, which may fairly be presumed to have led to the publication, and therefore prima facie relieves it from that just implication from which the general rule of the law is deduced. The rule of evidence as to such cases is accordingly so far changed as to impose it on the plaintiff to remove those presumptions flowing from the seeming obligations and situations of the parties, and to require him to bring home to the defendant the existence of malice as the true motive of his conduct. Beyond this extent no presumption can be permitted to operate, much less be made to sanctify the indulgence of malice, however wicked, however express, under the protection of legal forms. We conclude, then, that malice may be proved, though alleged to have existed in the proceedings before a court or legislative body, or any other tribunal or authority, although such court, legislative body, or other tribunal may have been the appropriate authority for redressing the grievance presented to it, and that proof of express malice in any written publication, petition, or proceeding addressed to such tribunal will render that publication, petition, or proceeding libelous in its character, and actionable, and will subject the author and publisher thereof to all consequences of libel. And we think that, in every case of a proceeding like those just enumerated, falsehood and the absence of probable cause will amount to proof of malice."

Applying the principles thus stated to the uncontroverted statements of the pleadings, and the statements of the letter which were the basis of this action, it is apparent that the controversy between the insurance company and Buckner & Co. had led the local board to impose certain "disabilities" upon the company, as well as a fine upon the firm of Mercer & Mercer, who had succeeded to the company's agency in Hopkinsville. The letter of the defendant was evidently written in response to a communication from Moore, secretary of the board, advising the company of the action of the Kentucky & Tennessee Board of Underwriters in removing the disabilities imposed by the board, and extending it an invitation to join the board. In response to this invitation, it was the right of the company to decline it, and, in declining, to give its reasons therefor. We do not think it came within the scope of the company's duty, to itself or to the board, to go beyond the proper requirements of an answer to the letter from the local board, to make charges of the character it contains against third persons. It is true that the controversy with Buckner & Co. led up to the correspondence between it and the local board. It had also had correspondence and litigation with Buckner & Co. It was not essential to a statement of its position, or necessary to a presentation of the reasons which actuated it in declining to join the board, to make charges of a most derogatory character against Buckner & Co., who were only indirectly involved in the correspondence. The company had a right to make any statement that was necessary with a view to fair and reasonable self-protection, or in justification of the position it took in relation to the local board. It was not essential to its rights or interests to make charges against the plaintiffs, involv-

ing their character and standing, and to put it into the power of the receiver of the letter to circulate these charges in a community where the plaintiffs lived. As was said by Judge Taft in Publishing Co. v. Hallam, cited above:

"The existence and extent of privilege in communications are determined by balancing the needs and good of society against the right of an individual to enjoy a good reputation when he has done nothing which ought to injure it. The privilege should always cease where the sacrifice of the individual right becomes so great that the public good to be derived from it is outweighed."

We have carefully examined the cases cited by counsel for plaintiff in error, and do not find any of them going to the extent which would be required in holding this letter within the class of communications which are considered as privileged. We are of opinion that the circuit court properly overruled the demurrer to the petition, and was right in sustaining the plaintiff's demurrer to the ninth paragraph of the answer. These conclusions make it unnecessary to further consider like questions raised during the trial upon the charge of the court directing the jury to consider the parts of the letter complained of as libelous per se, and in refusing to charge that the letter was a privileged communication.

4. There was testimony in the case, admitted over the objections of plaintiff in error, tending to show that the letter was talked about in Hopkinsville, outside of the board, and one witness testified that he heard it discussed a long time before the suit was brought. Another witness stated that copies of the letter were sent to all of the officers of the various insurance companies represented in Hopkinsville, and, when asked if the contents of the letter were generally known in Hopkinsville, said: "Yes. It was a matter of common occurrence for people to speak to me about it on the street. It was generally known." In charging the jury concerning the liability of the defendant for publication of the letter, and as to the measure of damages to be awarded, the learned judge said:

"Now, as to the question of how far the defendant is liable for the subsequent publication of this letter, it seems to have been intended to be read and presented to the local board. This letter was not a privileged communication, nor is there any right in the defendant to use the language that was used in the letter in regard to the plaintiff; but you can properly consider the knowledge, the circumstances under which the letter was read to the board, in considering the question of damages. The communication which was subsequently made to the superior board at Louisville, Ky., by order of the local board, should be considered in the question of damages, because the proof shows that it was the duty of the secretary to thus communicate this letter. And now, on the question of damages, you should also consider the circulation which was given to these libelous words by members of the board or others. But, in thus considering, you should not consider or estimate any damage which might arise to the plaintiff from the letter being circulated by him or communicated by him, or by his direction or by his consent."

Exception was taken to the court's saying that "you should also consider the circulation by others." Applying the charge to the testimony admitted, showing the general circulation of the libelous charges contained in the letter in Hopkinsville, it is apparent that the jury was directed to consider the general circulation by others of the charges in the community where Buckner & Co. resided. We

have already had occasion to consider the extent of the liability incurred in writing and publishing a letter containing libelous charges. A recovery may be had for such publication of the libel as is a natural consequence of putting the letter into circulation. It is a question of fact for the jury to say how far the circulation proven of the charges in question is a natural consequence of the sending of the letter by the manager of the insurance company to the secretary of the local board. The learned judge who presided, as we have seen, directed the jury to consider the circulation of the libelous words by members of the board or others, without requiring the jury to find that such circulation was a natural consequence of the act of sending the letter containing the libelous matter to the secretary. We are of the opinion that this was substantial error. It gave the jury a wrong basis upon which to award damages, which might be quite prejudicial to the plaintiff in error. For error in the charge in this respect, the judgment below is reversed and the case is remanded for a new trial.