# PORTO RICO
# FEDERAL REPORTS.

### CHARLES F. STOKES, Plff.,
*v.*
### HENRY W. DOOLEY, Dft.

San Juan, Law, No. 417.   Complaint for libel.

1. A demurrer to the complaint in an action for libel does not admit the truth of the innuendoes contained in the complaint.
2. The court will determine the question as to whether the alleged statement is or is not libelous, without reference to the innuendoes.
3. The statute of Porto Rico authorizes the bringing of libel suits based on words merely spoken, but not written or published, although not directed against the plaintiff in his official capacity.
4. Therefore, the contrary doctrine, enunciated in Pollard v. Lyon, 91 U. S. 225, 23 L. ed. 308, is not applicable in Porto Rico.
5. Words used against plaintiff in his official capacity, and which expose him to the hazard of losing his office, or which charge him with fraud, indirect dealings, or incapacity, are actionable *per se.*
6. In such a case no special damage need be laid.
7. In case of doubt the jury should determine the character of the words.
8. In the absence of publication no action will lie.   A statement to plaintiff alone is not such a publication.
9. A letter addressed to a medical officer of the navy, asking him why, for the cause of humanity, he did not take any interest in or offer

III. Porto Rico—1.

his assistance to a drowning man or to his rescuer, and stating that bystanders remarked on the failure, is libelous.

Opinion overruling demurrer, filed **April 22, 1907.**

---

*Messrs. Pettingill & Leake,* for plaintiff.

*J. F. P. des Garennes, Esq.,* and *Henry F. Hord, Esq.,* for the defendant.

RODEY, Judge, delivered the following opinion:

This is an action for libel. It is before the court upon the general demurrer of the defendant. Both parties are citizens of the United States, and therefore there is no question as to the jurisdiction generally. The complaint is in the ordinary form, and alleges that plaintiff has been, and is, a practising physician and surgeon, and also held, holds, and enjoys the title of surgeon in the United States Navy. That he was, and is, engaged in the practice of his profession in and near the city of San Juan, Porto Rico, and has enjoyed the confidence and esteem of the people of said community. That on the 4th day of September, 1906, the defendant falsely and maliciously wrote and published of and concerning him as such physician and surgeon, and of and concerning his practice and profession and his mode of conducting the same, and of and concerning his actions as such official of the United States Navy, the following words, that is to say:

"I take the liberty of asking you if you would mind giving me the reason why, yesterday afternoon (meaning the afternoon of September 3d, 1906), you failed to take any interest in or

Stokes v. Dooley.

offer your assistance in any way for the cause of common humanity in the rescue of the young man who came very near drowning a little to the east of the park (meaning that plaintiff knew a young man had come very near drowning and was at the time in need of plaintiff's assistance, yet plaintiff failed to go to his assistance, and thus showed himself unmindful of his professional duties, and refusing to obey the call of humanity), and the almost fatal outcome in the case of his rescuer, who was finally brought to shore completely exhausted (meaning that plaintiff knew a rescuer had gone out to the young man who was very near drowning, and permitted said rescuer to be brought to shore completely exhausted without going to his assistance, and leaving him in such state of complete exhaustion without proper medical aid or attendance, in violation of plaintiff's duty and the ethics of his profession, and that such exhaustion of said rescuer, for the lack of plaintiff's assistance and attention, came near resulting fatally). It is most remarkable (meaning worthy of unfavorable remark) that you (meaning plaintiff), an officer of the United States Navy and in the medical department of the same (meaning that plaintiff was a surgeon in the United States Navy, as aforesaid), was within a few hundred feet of where the party was brought to shore (meaning where the young man who came near drowning, and his rescuer, were brought to shore), and did not apparently evince any interest in the case, or offer your services (meaning that plaintiff, having actual knowledge of the need of his professional services, put on an appearance of indifference in order to avoid his duty of going to their assistance).

"An explanation as to what caused you to take the attitude you did (meaning the attitude of refusing to render assistance to persons in distress) would be extremely interesting (meaning

Stokes v. Dooley.

that plaintiff could not explain his conduct at that time consistently with the performance of his duty), not only to the writer, but to many of his friends (meaning that defendant had discussed with his friends the alleged conduct of plaintiff, and had expressed similar disapproval and criticism thereof to them as that contained in said letter), and to a score or more of bystanders who noted your presence and remarked most strongly on your failure to offer your services (meaning that plaintiff was so near the scene of the rescue referred to as that the bystanders regarded him as present at said place, and as necessarily having knowledge of the need of his services, and that said bystanders made very emphatic and unfavorable comment derogatory to the character of plaintiff because of his supposed failure to render service at a time when plaintiff could not help knowing that such services were necessary)."

And the plaintiff further alleges:

"That defendant so wrote and published the words aforesaid without any personal knowledge of the truth or falsity of the same, and without making any effort to ascertain by inquiry their truth or falsity.

"That the defendant also falsely and maliciously, and with intent still further to wound and annoy the plaintiff and to injure him in his said profession, repeated by word of mouth to divers and sundry persons the same or similar words and charges to those contained in the foregoing letter, and did further state in addition that such action of plaintiff was so outrageous that it should be reported to plaintiff's superior officers, and that defendant would see that such report was made.

"Whereby, the plaintiff has been greatly injured in his feelings, credit, and reputation, in his said practice or profession, and in his standing as an officer of said United States Navy

Stokes v. Dooley.

among those persons who are not personally acquainted with him, and has otherwise been much injured and damnified; wherefore the plaintiff demands judgment and claims $10,000 damages and costs of suit."

At the hearing on the demurrer, it was insisted by counsel for the defendant:

First. That a demurrer does not admit the innuendoes, but that the text of the matter said to constitute the libel must be considered by the court independently thereof to ascertain whether or not the matter is in fact libelous.

Second. That the letter, as above quoted, alleged to have been written by the defendant to the plaintiff, is not libelous *per se*, and hence not actionable.

Third. That therefore, because the words so alleged to have been written, not being actionable *per se*, the complaint is defective for want of proper colloquium, and proper allegation of special damage.

We are prepared to admit the first statement in the above list of contentions,—that a demurrer in a case of this kind does not admit the truth of the innuendoes set forth in the declaration, and that the court must determine for itself whether or not the matter is libelous and actionable *per se*. In fact, a demurrer never admits save what is well or properly pleaded, and if the innuendoes are not authorized by the words used, they cannot be held to be admitted as true.

On this subject, the text in vol. 13 of the Encyclopedia of Pleading & Practice, pp. 91 and 92, lays down the accepted doctrine as follows, and supports it by a considerable number of citations from New York, Indiana, and other states: "A demurrer does not necessarily admit the meaning attributed by the innuendo to the defamatory words. On demurrer the court will in-

quire whether the innuendo is warranted by the language used, considered in connection with the other facts to which it relates, and if found not to be warranted, the demurrer will be sustained unless the words without the innuendo are objectionable. The defendant may test the actionable quality of the words by demurrer, and to that extent only is his pleading to be construed as an admission of the allegations of the complaint."

Therefore it becomes necessary to consider the second contention, as to whether the language used with reference to this plaintiff is in fact, of itself, libelous. If the language used is so in fact and in law libelous, then counsel for both sides admit that, under the authorities, it was not necessary to allege special damages in the complaint, and that, in such case, the demurrer here must be overruled.

After a rather close, though hasty, examination made of the authorities, we find it to be the law that mere spoken words against another, that are not written or published, but often of the most vulgar and violent kind, involving even moral turpitude, are held in some jurisdictions, in the absence of a statute to the contrary, not to be actionable, when not directed against said person in his or her official capacity. Strange as this appears to be, it is held in such cases that the words used, in order to be actionable *per se,* must impute an indictable offense.

On the hearing we were astonished at the citation by counsel for defendant of the case of Pollard v. Lyon, 91 U. S. 225, 23 L. ed. 308, where Mr. Justice Clifford of the Supreme Court of the United States held this rule applicable in the District of Columbia; but we find, on examining the case, that there was no statute in the District of Columbia at that time (1875), under which the action could be maintained, and the words used, although grossly defamatory, did not involve an indictable of-

fense, and, not being directed at the plaintiff in relation to any official position, were held not actionable. Personally, we do not subscribe to this apparently well-settled rule, but it is so well settled as to this jurisdiction by reason of this decision of the Supreme Court of the United States that, were there no statute here, we would have to obey it. The doctrine referred to had its inception in the early ages of the common law, under the rule known as *scandalum magnatum,* and was intended to prevent the speaking of derogatory words of a peer, a judge, or other great officer of the realm. 18 Am. & Eng. Enc. Law, 2d ed. p. 863.

That same volume, p. 942, lays down what is called a broad statement of the general rule as to the libelous character of words touching another in his office, trade, profession, or business, as follows: "It is a familiar principle that words not actionable without proof of special damage may become so if spoken of one engaged in a particular calling or profession; the rule being that any words spoken of a person in his office, trade, profession, business, or means of getting a livelihood, which tend to expose him to the hazard of losing his office, or which charge him with fraud, indirect dealings, or incapacity, and thereby tend to injure him in his trade, profession, or business, are actionable without proof of special damage, even though such words, if spoken or written of an ordinary person, might not be actionable *per se."*

That work further states that where the slanderous matter is actionable in itself, and independently of the fact that it touched the plaintiff in his office, trade, profession, or business, the plaintiff may, nevertheless, declare upon it as affecting him peculiarly in his office; and it is further laid down that, as a general rule, those words are actionable when applied to one with reference

to his profession or trade, which impute to him the want of those
qualifications which are essential to him in his profession or
trade,—such as to attribute knavery to a lawyer, ignorance to a
physician, profligacy to a divine, cowardice to a soldier, insolv-
ency or dishonesty to a merchant or tradesman, etc.   And it is
stated in the text on page 946 that: "It is a question for the
jury, in a case of doubt or ambiguity, whether or not the words
were used of the plaintiff with reference to his special character
or relation."

Counsel for the defendant, on the hearing of this demurrer,
conceded the high character of plaintiff, and restricted their ar-
gument to its proper legal limits in defense of their client, but
insisted that, eliminating the innuendoes of plaintiff's counsel
from the letter in question, it amounted to perhaps nothing more
than a mere impertinence on the part of defendant, and was not
actionable of itself.   We confess that we were impressed with
this argument up to the time of the making of our search as to
the law in the premises.   We could not evade the impression that
the defendant, excited by the occurrence, of which he, no doubt,
was a witness, perhaps talked considerably about the matter at
the time, and, before his indignation, whether justified or not,
had subsided, wrote the letter in question to plaintiff.

We had grave doubts as to whether or not the letter, taken
by itself, amounted to such a publication as would bring it with-
in the general law and our local statutes on the subject, but we
find that a slander uttered in the presence of others often
amounts to a publication thereof, and in that regard we feel that
the following paragraphs from page 1017 of the Encyclopedia
before referred to, are in point:

"The sending of a libelous communication or libelous mat-
ter to the person defamed does not constitute an actionable pub-

Stokes v. Dooley.

lication, even though the matter does actually reach the hands of a third person, where this is not intended nor reasonably to be expected by the sender, but it is otherwise where the sender has reason to suppose that the matter so sent will reach the hands or be brought to the knowledge of third persons, or such a result naturally follows from the sending of the defamatory matter.

"It has been held that defamatory matter written on a postal card and mailed to the plaintiff was not published so as to support an action; but, on the other hand, this has been denied, and it has also been held that libelous matter conspicuously printed on an envelope inclosing a letter sent through the mail to the person defamed was sufficiently published.

"There may be a publication of a slander by addressing the defamatory words directly to the plaintiff, if others are present and hear the words spoken; but if the words are spoken to the plaintiff alone, no other person being within hearing, there is no such publication as will support an action."

The letter in question, because of its own terms, in the light of the paragraph last above quoted, in our opinion, justifies most of the innuendoes and appears to be clearly within the rule as actionable.

Secs. 567–569 of the Revised Statutes of Porto Rico, 1902, establish the right to this sort of an action for libel and slander, and define libel as the malicious defamation of a person, made public by writing, printing, etc., and define slander as a false and unprivileged publication other than libel, which imputes to any person the commission of a crime, or tends directly to injure him in respect to his office, profession, trade, or business, or which, by natural consequences, causes actual damages.

Section 572 provides that if the plaintiff be a public employee and the libel refers to acts connected with his office, judgment

shall be rendered for the defendant if he prove the truth of his charges, and that is followed by § 573, which provides that, if a judgment be given in favor of plaintiff, it shall include costs and a reasonable attorney's fee, to be assessed by the court, and that if it is in favor of the defendant and the court should find that the action was commenced without justifiable cause, the judgment shall include, besides costs, an attorney's fee which shall be assessed by the court, and shall not exceed $150.

It is universally conceded that courts of the United States, as to actions at law, are, in general, bound to follow the local statutes, while they are generally free from the same as to their chancery practice. It can thus be seen that it is a very doubtful question whether or not the local legislature intended a demurrer to be interposed, though they probably could not prevent it, save in the most unquestioned cases, and that the intent of the local legislature is to leave all such matters in general to the jury, and punishes either the plaintiff or the defendant by the imposition of this attorney's fee in addition to the costs for the filing of a frivolous suit.

Section 243 of the local Penal Code states that a libel is a malicious defamation, expressed either by writing, printing, etc., impeaching the honesty, integrity, virtue, or reputation of another, etc. And § 264 states that the jury on a trial for libel has a right to determine the law and the fact, and, even though this is somewhat restricted by the following section, still it shows the intent of the local legislature in the premises. Sections 130 and 131 of the local Code of Civil Procedure (1904) provide that, in an action for libel or slander, it is not necessary to state in the complaint any extrinsic facts for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause of action arose, and that the defendant may, in

Stokes v. Dooley.

his answer, allege the truth of the matter charged, and any other mitigating circumstances that may exist to reduce the amount of the damages, etc.

Townshend on Slander and Libel, 4th ed. p. 251, in a note states that: "Charging a physician with being guilty of conduct derogatory to the character of a gentleman and of a medical man, held actionable," citing Bailey v. Abercrombie, 3 Menzie's Reports, 33. And in Odgers on Libel and Slander it is set out on page 51, when holding that the actionable words must touch the plaintiff in his office, profession, or trade, that the words must impeach either his skill or his knowledge, or affect him in his official or professional conduct.

One of the best-considered cases, as throwing light on the present phase of the case at bar, that we have found, is one decided November 13, 1899, in the circuit court of appeals of the sixth circuit of the United States, entitled Merchants' Ins. Co. v. Buckner, 39 C. C. A. 19, 98 Fed. 222. It was tried by United States Judges Taft, Lurton, and Day, the first now being Secretary of War of the United States, and the last an Associate Justice of the Supreme Court of the United States. The opinion is by Judge Day for the court, and paragraph two of the syllabus, stating one of the propositions passed upon, is as follows: "Entirely different rules govern actions for libel and slander, and words which do not technically charge a criminal offense, and, if spoken, would not be actionable without allegation and proof of special damages, are libelous and actionable *per se* when written or printed and published where they seriously reflect upon the character and integrity of the person of whom they are written, and tend to subject him to loss of public confidence and respect."

The same Judge a year later, on May 8, 1900, in the case

Stokes v. Dooley.

of Culmer v. Canby, 41 C. C. A. 302, 101 Fed. 195, reviewed
the case last above referred to with approval, and held again
in the case he was then considering that: "If the publication
complained of in an action for libel, giving to the language its
ordinary and usual meaning, is actionable without averment of
special damage, the petition will not be demurrable on the
ground that it does not state a cause of action because of in-
nuendoes that attribute a meaning to words which they will not
bear."

It is true that in these two cases the language used which was
claimed to constitute the libel was of a decidedly stronger charac-
ter than that used in the case at bar, but a reading of the cases
will convince anyone, we think, that, although close to the line,
the language here used is within the rule and should be held ac-
tionable.

The plaintiff here is an officer in the Navy of the United
States, and both in the Army and Navy it is matter of common
knowledge that one of the most frequent allegations in courts-
martial is that the defendant has been "guilty of conduct un-
becoming to an officer and a gentleman." The letter in this
case, as above quoted, uses this language: "It is most remarkable
that you, an officer of the United States Navy and in the medi-
cal department of the same, was (were) within a hundred feet
of where the party was brought to shore, and did not apparently
evince any interest in the case or offer your services." That
sentence, coupled with the remainder of the letter, and inde-
pendent of the innuendoes, does, in our opinion, touch plaintiff
in his official character, and charges him with being inhuman,
and oblivious to the demands of common humanity, and which
we think is so contrary to the ethics of respectable physicians
and those of the public generally, that it would tend to lessen

Stokes v. Dooley.

plaintiff in the esteem not only of the public, but of his brother officers and brother physicians in and out of the Navy, and he ought to have an action therefor and be given an opportunity to prove the same false if he can.

It is commendable that the standard of ethics and deportment in the Army and Navy is, according to common knowledge, high, and a failure to observe the proprieties in that regard does, of necessity, subject the delinquent to loss of standing. For instance, for the commander of one of our war vessels to refuse succor or aid to any ship in distress, whether or not such action is included in the regulations, would surely subject the officer to censure and loss of standing. The recent case of the President sending one of our warships to aid the sufferers of the Kingston disaster received the commendation of the civilized world, and the action of Governor Swettenham in ordering Admiral Davis, as it is said, to withdraw his marines, was disapproved by his own government and considered in bad taste by the press of all nations. It must be remembered that this is a civil action, brought under the local statute, and that most of the states have statutes making any language used against the honor of another, an assault with words, which is considered a sufficient remedy in most cases, but as the right to a civil action exists, it lies with the plaintiff to determine whether or not he will avail himself of it. Having brought his suit, he is entitled to have the law declared as we find it. With the advisability of the suit we have nothing to do,—that is matter for the plaintiff himself.

Therefore, believing, as we do, that the letter and the matters to which it refers show, under the local law, a publication that comes within the local statute giving an action therefor, and believing it to be peculiarly the province of a jury to pass upon the

question of damages in such a case, we hold that the demurrer must be overruled and the defendant required to further plead or answer, and it is so ordered.