ORREN DAVIS *vs.* AVERY STARRETT.

Knox.　Opinion June 30, 1903.

*Slander.　Words Actionable Per Se.　Privileged Communication.　Malice. Evidence.　Repetition of Slander.　Probable Consequence.　Special Damages.　Boycott.　Pleading.　Excessive Damages.*

1.　To say of one that he is the greatest rumseller in town, taking the words in their natural and ordinary signification, either imports a criminal charge ex vi termini, or is susceptible of that construction, and as imputing a criminal charge, is actionable per se.

2.　An action for slander may be sustainable upon proof of facts from which malice may be implied, which is called malice in law.　But the plaintiff may also show malice in fact, that is, actual malice, a desire and intention to injure.

3.　To show actual malice, it is competent for the plaintiff to prove that the defendant has repeated the slander charged, or has used the same or similar words upon other occasions.

4. The materiality of evidence of other statements than the one sued for, depends not upon whether they are privileged or not, but upon whether or not they have a tendency to show actual malice in the utterance of the slander in suit.

5. Another statement, otherwise privileged, may therefore be admissible to show actual malice in making the statement sued for.

6. The plaintiff alleged special damages, in that he "had been greatly injured in his business as a trader by persons boycotting his store," on account of the slander charged : —

*Held;* that the word "boycott" in such connection does not necessarily imply a combination to injure, and that it was open to the plaintiff to show refusal to trade on the part of old customers, on account of defendant's slander, and that, with or without combination.

7. While one who utters a slander is not responsible, either as on a distinct cause of action, or by way of aggravation of damages for the original slander, for its voluntary and unjustifiable repetition without his authority or request, by others over whom he has no control, it is nevertheless true that the slanderer is responsible for the natural and necessary consequences of his act, and it may well be held that the repetition of a slander is a natural consequence of the original publication, and may be regarded as fairly within the contemplation of the original slanderer, and a consequence for which he is responsible.

*Held;* that the jury in this case were justified in returning a verdict for the plaintiff, but taking into account all the elements of damage which were open to the plaintiff, for loss of reputation, mental suffering, loss of business, and even punitive damages, the court is further of the opinion that the verdict is unwarrantably large.

Exceptions and motion by defendant.    Motion sustained.

Exceptions overruled.

Action on the case for slander uttered by defendant concerning plaintiff.

The declaration contained two counts; the first in the common form, in which it was alleged that the plaintiff said of the defendant, "Orren Davis is the greatest rumseller in Warren, Maine."

The second count alleged a boycott of plaintiff's store as the result of the slanderous reports concerning him circulated by the plaintiff and was as follows:—

"Also for that the said plaintiff is a good, true, and honest citizen of this State and from his birth hath hitherto always behaved and governed himself as such, and during that time hath been held and esteemed and respected to be of good name, character and reputation

as well, among a great number of his fellow citizens as among all his neighbors and acquaintances and during all that time has never been guilty of committing any crime such as selling intoxicating liquor or any such hurtful or disgraceful crime, and whereas the said defendant well knowing the premises aforesaid but contriving and maliciously intending to hurt, injure, degrade and disgrace the plaintiff in his aforesaid good name, reputation and character to subject him to the pains and penalties of the laws of the State provided against those who sell intoxicating liquors, did on the fifteenth day of September, A. D. 1901, at Warren, in the County of Knox and on divers other days and times since the said fifteenth day of September and on the day of the purchase of this writ, in the presence and hearing of divers good citizens of this State, of and concerning the plaintiff did falsely and maliciously speak and utter in substance the following false, scandalous and defamatory words of and concerning the plaintiff; "Orren Davis," meaning the plaintiff, "is a rumseller," meaning that the same plaintiff was engaged in the selling of intoxicating liquor in this State contrary to law by speaking and publishing of which said several false, malicious and scandalous and defamatory words and of the false and malicious charge the plaintiff has been greatly injured and prejudiced in his own good name and character and reputation aforesaid, and his business as a trader by persons boycotting his store on account of the slanderous reports spoken and published by the defendant aforesaid greatly injured and he has been rendered liable to be prosecuted for the crime of selling intoxicating liquors in the State contrary to law and has suffered and undergone great pain and distress and trouble both of body and mind and likewise greatly injured and prejudiced.

To the damage of the said plaintiff (as he says) the sum of three thousand dollars."

Defendant moved for a statement of particulars and the motion was allowed. The plaintiff complied with the order by filing the following specifications:

"The plaintiff will undertake to prove that the defendant, Avery Starrett, on or about the sixteenth day of Aug. 1901, said in substance to C. H. Webster at Warren in said County of Knox, 'Orren

Davis is a rumseller.'   Also the said Avery Starrett at Warren, Sept. 10, 1901, in the presence of divers citizens among whom was one Newel Eugley made the following statement that 'Orren Davis,' meaning the plaintiff, 'is the biggest rumseller in town,' and that he (Starrett) 'could back it up.'

And the plaintiff expects to prove further by Dexter B. Hahn, that in Sept., 1901, Avery Starrett said that 'Orren Davis is a rumseller,' and that at the same time said to Joseph W. Hahn and Augustus Hahn, that 'Orren Davis is a rumseller,' also that the said Avery Starrett said in the presence of divers other witnesses, whose names are at the present time unknown to the plaintiff, in Warren aforesaid and at the time aforesaid, 'Orren Davis is a rumseller.'"

The plea was the general issue with the following brief statement:

"And for brief statement of special matter of his defense, the defendant, not confessing the utterance of any of the alleged slanderous words charged in the plaintiff's declaration, says:

1.   That he will prove the essential truth of whatever words the plaintiff shall prove that he has spoken of and concerning the plaintiff.

2.   That if it shall appear that the defendant spoke the alleged slanderous words of and concerning the plaintiff set out in the plaintiff's declaration, it will also appear that such words, if they would otherwise have been slanderous, were spoken under such circumstances as made them a privileged communication, and without malice to the plaintiff, and that therefore they were not slanderous."

The facts are stated in the opinion.

*L. M. Staples*, for plaintiff.

*L. F. Starrett*, for defendant.

SITTING:   WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, SPEAR, JJ.

SAVAGE, J.   Action for slander in which the plaintiff recovered a verdict for $1500.   In one count of the writ it is alleged that the plaintiff said of the defendant, "Orren Davis is the greatest rumseller

in Warren, Maine," and in another that he said, "Orren Davis is a rumseller." Special damages are averred.

EXCEPTIONS.

1. The plaintiff offered the testimony of one Joseph Hahn to prove that the defendant said that the plaintiff was the "worst" or the "greatest" rumseller in Warren. Hahn also testified that the statement was made to himself, and that no one else was present. The defendant claimed and testified that he did not make this statement to Hahn, but that he did say to one Webster in the presence of Joseph Hahn, that he considered the defendant the worst rumseller in the town of Warren. The defendant further testified that he made no such statement about the defendant to Hahn at all, or in his presence or hearing at any other time than the occasion of the conversation with Webster. Hence he claims that the conversation testified to by Hahn must be the same one he admits having had with Webster, but varying in details.

The defendant claims that the communication to Webster was privileged by the occasion and circumstances under which it was uttered. His version is as follows: "In the field we (defendant and Webster) were together at work, and he asked me to bring up a package for him from Mr. Davis previously; I brought it up and gave it to him, and he told me it was an application for membership in the Order of Odd Fellows in the village. . . . I asked him if he was going to send in his name or his application by Orren Davis, and he said he was, and I told him I should rather send it in by any other member that I knew of in the order other than by him. He asked me why, and I said, because he doesn't have a good reputation, and further he asked me what I meant by that, and I said that I considered him the worst rumseller in the town of Warren. . . . . Joseph Hahn was at work there in the field." Webster testified that Hahn was not over a rod away.

The presiding justice ruled that the communication to Webster was not privileged, and the defendant excepted.

We think, as claimed by the learned counsel for the defendant, that it is made fairly certain by reference to the plaintiff's specifications and the instructions of the court, that neither the conversation

with Joseph Hahn, nor that with Webster, whether they were the same conversation or not, was the slander for which the plaintiff recovered damages, and thereupon it is suggested that the question whether the communication to Webster was privileged or not was immaterial, because not relating to the slander which was the basis of the action.

It does not seem to us that the question whether the communication to Webster was technically privileged or not, is material to any issue presented by the case. In slander, as is well settled, while an action may be sustainable upon proof of facts from which malice may be implied, which is called malice in law, the plaintiff may also show malice in fact, that is, actual malice, a desire and intention to injure. *True* v. *Plumley,* 36 Maine, 466. And as bearing upon the question of actual malice, it is competent for the plaintiff to show that the defendant has repeated the slander charged, or has used the same or similar words upon other occasions. *Smith* v. *Wyman,* 16 Maine, 13; *True* v. *Plumley,* supra; *Conant* v. *Leslie,* 85 Maine, 257. Such other communications, whether claimed to be privileged or not, are admissible, but solely for the purpose of showing actual malice in the slander sued for,—to show the state of mind, the purpose and intention of the slanderer.

Upon examination of the charge of the presiding justice, which is made a part of the bill of exceptions, we find that in this case the jury were told that the slanderous communications, other than the one which was the basis of the action, were not admitted to prove the allegation of slander charged in the writ, but "as bearing upon the question of motive and intent and actual malice on the part of the defendant." Such communications are to be viewed not only in the light of the words themselves, but in the light of the surrounding circumstances. The words themselves, when spoken, where spoken, and to whom spoken, the occasion of their utterance, the spirit and purpose of the speaker are all to be taken into consideration, in pursuing the single inquiry whether such words spoken under such conditions have any tendency to show that in uttering the slander sued for, the defendant was moved by actual malice. If yes, then they are properly to be considered. If no, then they are to be disregarded.

It is easily apparent that slanderous words, otherwise privileged, may be uttered in such a spirit or under such circumstances as to indicate that they themselves are the product of a hostile or malevolent disposition. If so, they certainly would have a tendency to show that in uttering some other but similar, slander, the speaker was moved by the same disposition. The materiality, then, of evidence of other statements than the one sued for depends not upon whether they are privileged or not, but upon whether or not they have a tendency to show actual malice, in the utterance of the slander in suit.

It was immaterial, therefore, upon the only question to which it could be referred, whether the defendant's communication to Webster was privileged or not. The jury were entitled to consider it as bearing on the question of the actual malice of the defendant in the substantive slander sued for. The defendant's exception to the instruction under consideration must be overruled. *Blake* v. *Parlin*, 22 Maine, 395; *Neal* v. *Paine*, 35 Maine, 158. And the defendant asked for no other instructions relating to this issue.

2. It is alleged in one count that on account of the slanderous reports uttered by the defendant he had been greatly injured in his " business as a trader by persons boycotting his store." The defendant requested a ruling that "because the word 'boycotting' necessarily involved the idea of combination, before special damages could be proved, the plaintiff must lay a foundation by showing a combination of parties to injure the plaintiff's business," which ruling the presiding justice refused to give. This refusal was right. The defendant relies upon etymological definitions to show that the idea of "combination to injure" is necessarily involved in the word "boycott." The word is comparatively new. As it first came into use in connection with the treatment which the tenants of Captain Boycott extended to their landlord, it undoubtedly did embody the notion of a combination. But the word quickly and generally came to have a more enlarged sense. The defendant's counsel frankly concedes that "the word is sometimes loosely used in conversation to express a certain amount of injurious discrimination without any special agreement or understanding on the part of those who discriminate." That is indeed a common colloquial use of the word. So is refusal

by one's customers to trade, for some reason that is common, though there be no combination. And under that allegation in the plaintiff's writ, it was open to him to show refusal to trade on the part of old customers, on account of defendant's slander, and that, with or without combination.

The defendant does not press the remaining exception. We perceive no error in the ruling.

MOTION. It is not seriously controverted that in this State to say of one that he is the greatest rumseller in town, taking the words in their natural and ordinary signification, either imports a criminal charge ex vi termini, or is susceptible of that construction, and as imputing a criminal charge, is actionable per se. What is sought is not ingenious interpretation, but ordinary significance, and the import of the language used is for the jury. *Usher* v. *Severance*, 20 Maine, 9, 37 Am. Dec. 33. The defendant denying the use of the precise language alleged, admitted the use of language of similar purport, and as to the language proved, he pleaded the truth in justification. The jury found that he did use the language charged, and that the justification failed. The evidence warranted both findings.

The only remaining question open under the motion is whether the jury manifestly erred in the amount of damages awarded. The plaintiff claims damages to reputation, for mental suffering and for loss of business, and in addition to this he claims that punitive damages were allowable. The defendant urgently contends that nominal damages at the most are all the plaintiff is entitled to recover, that as to the one slander, upon which he claims the jury have based their verdict, namely the communication to Augustus Hahn in the presence of Eugley, as testified to by Eugley, there is no proof that it caused injury to the plaintiff, that it was induced by the inquiries of Hahn, and that if repeated to the injury of the plaintiff, he is not responsible for the repetition. We do not agree with the defendant's conclusion. In the first place plaintiff is entitled to recover compensation which the law will presume must naturally, proximately and necessarily result from the utterance of the slander, such as injury to the feelings and injury to the reputation, and these damages may be

more or less according to circumstances. They are by no means confined to the limit of nominal damages. The plaintiff is also entitled to recover such special damages alleged and proved as have resulted exclusively from the utterance of the slander. But the defendant says that none have been proved, that there has been no casual connection proved between the defendant's language and the plaintiff's loss of trade. And the defendant relies upon the familiar rule that one who utters à slander is not responsible, either as on a distinct cause of action or by way of aggravation of damages for the original slander, for its voluntary and unjustifiable repetition, without his authority or request, by others over whom he has no control. *Hastings* v. *Stetson*, 126 Mass. 329, 30 Am. Rep. 683. But this rule has one important qualification. It is a general principle that every one is responsible for the natural and necessary consequences of his act. And it well may be that the repetition of a slander may be the natural consequence of the defendant's original publication. Odgers on Libel and Slander, p. 294. The same thought is expressed in the note to *Gilson* v. *Delaware & Hudson Canal Co.*, 65 Vt. 213, 36 Am. St. Rep. at p. 844, where the editor says:—"If the test of natural and probable consequence is to be applied, there should certainly be no difficulty in holding that the original slanderer must be taken to have intended all the damages that the widest possible spread of the slander could produce, for it is the most threadbare of truisms to say that nine persons out of every ten to whom a slander is spoken are certain to repeat it." Without going to the full extent of this last citation, we think it may be said with reason in this case that the repetition of the slander by those to whom it was uttered, and after that by others, may be regarded as fairly within the contemplation of the original slander, and a consequence for which the defendant may be held responsible.

Aside from the damages to reputation and for injury to feelings, which can only be estimated, but not computed, there is evidence which warranted the jury in finding that the plaintiff had suffered a loss of business as a trader on account of the slanderous statement uttered by the defendant. The plaintiff himself places it at one-third of his trade, which before this slander he says was from one hundred

to one hundred and fifty dollars a month. His pecuniary loss of course is only the loss of profits on that one-third, at his own estimate. We think however that it is clearly proved that all of this loss was not due to the defendant's slander. It is evident that after this suit was commenced the people in Warren to some extent "took sides", and that the defendant lost some custom in this way. Also it appears that after the slander and before the trial, a new store with new goods in the plaintiff's line was opened in Warren, and to this fact some of the plaintiff's loss of trade was undoubtedly due.

And as bearing upon the loss to reputation, it is shown that the plaintiff for some years prior to this slander, had been suffering from the reputation of being a rumseller, though the scandal was manifestly increased after the defendant uttered his slander. The plaintiff also claims that punitive damages were recoverable, on the ground that express malice was shown. Repetitions of a slander by the defendant, even after suit brought, are admissible to show express or actual malice, and to enhance damages. *Smith* v. *Wyman*, 16 Maine, 14; *True* v. *Plumley*, 36 Maine, 466; *Jellison* v. *Goodwin*, 43 Maine, 287, 69 Am. Dec. 62. Such repetitions are not conclusive of actual malice. They are evidence from which the jury may infer it. The defendant claims that his acts and words were proper and lawful even, and that he did no more than any citizen should do in an endeavor to repress crime. The law permits and even encourages good citizens to aid in the enforcement of law. If this defendant believed and had reason to believe that the plaintiff was a rumseller, the law authorized him to make a complaint under oath against the plaintiff. And if he had done so, he would have been protected, whether the charge turned out to be true or not. But if he chose to talk rather than to act, he came under the necessity of proving that his charges were true unless privileged.

So it has been held that to justify by pleading the truth, if the justification fails, may be regarded as an aggravation of damages. *Smith* v. *Wyman*, supra; *Sawyer* v. *Hopkins*, 22 Maine, 268; *Jackson* v. *Stetson*, 15 Mass. 48. But taking all considerations into account, after carefully weighing all the evidence, we are of opinion that the verdict is unwarrantably large. We think that in any event

upon the evidence now presented, no verdict for more than six hundred dollars ought to stand.

> *Exceptions overruled. If the plaintiff remits all of the verdict in excess of $600, within thirty days after the rescript in this case is received, motion overruled; otherwise motion sustained, new trial granted.*