RUBY R. McMULLEN

*vs.*

MILDRED I. CORKUM

Kennebec.    Opinion, September 20, 1947.

48

*McLean, Southard & Hunt,* for plaintiff.

*Goodspeed & Goodspeed,*
*Arthur F. Tiffin,* for defendant.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, JJ., MANSER, A. R. J.

MANSER, A. R. J.   This is an action for slander in which the plaintiff recovered a jury verdict of $4,300.   It comes forward on a motion for a new trial.

As factual background, the record discloses that Mrs. Corkum, the defendant, was the manager of the Accessory Shop, a retail store in Gardiner, Maine, where articles for women's wear and use were sold.   The business was established in 1932, and was owned by the husband and daughter of the defendant, Jessen A. Corkum, and Beatrice Wehrwein.   Mr. Corkum was not actively engaged in the business but exercised somewhat of a supervisory relation, particularly with regard to financial matters.   Mrs. Wehrwein, nee Corkum, was actively employed until some time after

her marriage in 1940, and since then on occasion when needed.

The plaintiff, Mrs. McMullen, had been a friend of the family for practically a score of years prior to the establishment of the business. At that time, by reason of her experience in similar stores, she was of assistance by way of advice, and in practical matters in the arrangement and display of goods. She was employed as head clerk and continued as such until August, 1945, a period of thirteen years. She was accorded the privilege of purchasing goods at a discount, both for herself and members of her family. The same privilege was extended to other clerks. The apparently friendly relationship of the parties continued until the dismissal of the plaintiff from her position early in August, 1945.

For quite a number of years there occurred more or less frequent shortages of cash and merchandise, some of which were shown to be occasioned by mistakes or oversight of one or another of the employed personnel, but some were not solved.

It was the practice of the plaintiff to take home merchandise and if she decided to keep it, she would, according to her version, report it to the defendant, when it would be paid for or charged to her account. It is the representation of the plaintiff, and some other witnesses called by her, that no memorandum was ever made as to articles taken by clerks, and this with the knowledge and approval of the defendant. Such failure to have any record of goods taken from the store was categorically denied by the defendant, her daughter, and another employee, who maintained that in all instances of which they had knowledge, a memorandum in duplicate was required. It is urged that any other method would be patently contrary to safe business usages and so testimony to such effect was not credible.

In any event, as appears in the record, the defendant became suspicious of the actions of the plaintiff, and testified

from her own observation or upon information from the clerks that the plaintiff at times would secrete articles in various places and receptacles and later take them from the store without information of the fact to the defendant; that she sometimes made sales and would ring up on the cash register a lesser amount than the sale price, or else make a register record of "No sale," and then furtively go to her handbag or pouch and apparently place folded bills therein.

Measures were taken by the defendant and her husband by mechanical computation of amounts shown by cash register tapes with the actual cash receipts, and the defendant introduced exhibits tending to show cash deficits.

Finally, after a conference between the defendant and her husband, the advice of counsel was sought, and as a result, a woman detective was employed, ostensibly as a clerk in the store. She remained a few days. Her testimony was given as to her own observations concerning alleged irregularities on the part of the plaintiff with regard to cash and merchandise. She took occasion to make marks of identification of certain items on the register tape and on one piece of merchandise.

On August 5, 1945, Mr. Corkum secured a warrant to search the premises of the plaintiff for certain specified merchandise. The defendant went with the officer and there identified the piece of merchandise which had been marked by the detective in the store. A few other items claimed by the defendant to belong to the Shop were found, but not removed, as they were not designated in the warrant.

Following the search, Mr. Corkum made a complaint in the Municipal Court against the plaintiff for larceny. The hearing lasted two days, and the plaintiff was found Not Guilty. While Mrs. Corkum did not sign the complaint, it appears, inferentially at least, that the defendant attended the hearing. These proceedings were all taken upon advice of counsel, who appeared in connection with the prosecution.

In connection with the events thus arising, it is alleged by the plaintiff in the present action that the defendant made slanderous statements concerning the plaintiff. They were:

1. "She has stolen a lot of money from us."

2. "Another one of her lies to cover up what she has been taking here, but we have caught her."

3. Again, in a statement to the defendant by the brother-in-law of the plaintiff: "I was surprised to hear about Ruby," it is alleged the defendant said, "It is true."

4. Another allegation was that, in answer to a question by an unidentified customer as to whether she could see the defendant at the store on the following Monday, she replied, "No, we won't be here Monday. One of our clerks took some merchandise and the hearing is on Monday."

5. There was also a general allegation that the defendant had publicly charged the plaintiff with larceny or embezzlement.

The defendant, in her pleadings, admitted that she used the language alleged in the third and fourth counts, as indicated above, and asserted the truth thereof in justification.

She denied making the statements alleged in the other counts. On these issues, stress of argument for a new trial is that the plaintiff's witnesses, who testified as to the alleged slanders, were biased by relationship or friendship to her, and in one instance came from a man who had a resentful attitude toward Mr. Corkum on account of incidents occurring between them.

While these contentions deserve consideration, yet it cannot be said that the plaintiff did not present explicit and substantive testimony of the alleged slanders. Controversial questions of fact were thus submitted to the jury and it is not shown that its verdict was so clearly wrong as to liability that it must compel the conclusion it was the re-

sult of prejudice, bias, passion or a misconception of the law. Neither side excepted to the instructions given to the jury.

Concerning the statements admittedly made by the defendant, the burden of proof of the truth thereof was upon the defendant, and the jury was so instructed.

It also appears that there was no request for specific findings upon the various counts. The general verdict as to liability returned by the jury, must be upheld.

The matter of the amount of the verdict presents a different problem.

It is established law that language imputing a criminal charge is actionable *per se,* from which malice in law may be implied, and such damages as naturally, proximately and necessarily result from the utterance of the slander, to persons other than the plaintiff, are recoverable.

Such damages would include the elements of mental suffering, humiliation, embarrassment, effect upon reputation and loss of social standing, so far as they have been proved or may reasonably be presumed.

A jury would be warranted in increasing an award because of the failure of a defendant to establish by evidence a plea of truth.

Actual malice, or malice in fact, may be shown for the purpose of enhancing damages. These principles are well set forth in *Davis* v. *Starrett,* 97 Me. 568; 55 A. 516; *Elms* v. *Crane,* 118 Me. 261; 107 A. 852; *Hall* v. *Edwards,* 138 Me. 231; 23 A. (2nd) 889, and cases therein cited.

Consideration is now given to their application to the facts of the instant case. The principle that the alleged slanders were actionable *per se* cannot be gainsaid and has entire applicability.

As to the principle of enhancement of damages in event the defendant fails to establish by evidence a plea of truth

as to admitted statements, this concerns the third and fourth counts. There is some uncertainty as to its present application. No instruction of this character was given and none was requested. The jury was without guidance or information in this respect. As heretofore noted, there was a general verdict without special findings as to each count. The court in its charge said:

> "Now, if the plaintiff satisfies you, if she has sustained the burden of proof even on one count in the writ, she is entitled to a verdict at your hands." "You are not going to be asked to find on each one of the separate counts."

While it cannot be said, definitely, that the verdict was against the defendant on the counts in question, yet, despite the uncertainty of the record in this respect, as the defendant asked for no special findings, such uncertainty is resolved against her and the court makes no diminution of the verdict on that account.

A different situation is presented with regard to the question of actual malice. Such malice is defined in the popular sense of rancor, personal animosity or ill will. It implies a desire and an intention to injure. *Jellison* v. *Goodwin,* 43 Me. 287; *Elms* v. *Crane, supra.*

It does not exist if the defendant had an honest belief in the truth of her accusations, which belief was based upon the standard of care and caution that a reasonably prudent person would have exercised before making such accusations. The belief must be based upon reasonable and probable grounds. *Sullivan* v. *McCafferty,* 117 Me. 1; 102 A. 324, in which is an illuminating discussion of the matter.

The record negatives proof of actual malice. As outlined in the facts stated herein, it appears that the parties had been friends for years. The plaintiff had been the trusted chief clerk in the store managed by the defendant. Covering a period of several years, there had been shortages in money and merchandise. This was known to both parties.

Various methods of checking were used. From the defendant's own scrutiny, and information supplied by disinterested clerks, the defendant became convinced that the loss of goods and money was caused by intended peculations and that the plaintiff was the person responsible. Then the defendant and her husband sought the advice of competent attorneys. As a result, a woman detective was employed. Within a period of a few days the detective reported information of several incidents relating to the plaintiff, which led to the issuance of a search warrant on complaint of Mr. Corkum, and the finding of one article of merchandise at the home of the plaintiff and which had been marked to make identification certain.

That the accusations were not sustained by the jury, after hearing the version of the plaintiff and her witnesses, is not justification for a finding of actual malice on the part of the defendant. Under the facts of record, no logical reason is found to support the charge of personal animosity or a desire and intention to injure the plaintiff. Instead, the elements necessary to establish the good faith of the defendant are present.

The jury was left unguided and to its own conception of the law upon this question, as no instructions were asked for or given by the presiding justice thereon, although it was instructed in general terms that,

> "The theory of damages is fair and reasonable compensation and no more."

Again, it was in evidence that the plaintiff was dismissed from her employment. It is not disclosed whether she made any effort to secure employment elsewhere, but the fact of dismissal was thus brought to the attention of the jury. There was no allegation in the writ setting forth a claim for special damages in this or any other respect. Such damages must be alleged and proved. *Davis* v. *Starrett, supra; Elms* v. *Crane, supra.* The jury received no instruction relating thereto.

There was evidence of damages which may be considered to naturally, proximately and necessarily result from the utterances of the slanders so far as mental suffering, bodily health, humiliation and embarrassment are concerned. There is no substantive evidence as to their effect upon her reputation or social standing. While, ordinarily, there arises an adverse presumption with reference thereto, it appears in the present case that she certainly has not lost the esteem and regard of her friends and acquaintances. So far as the general public is concerned, the favorable result to her upon the charge in Municipal Court may well have tended to dissipate any doubts as to her integrity.

For the reasons given herein, the court holds that the verdict of the jury was clearly excessive as to damages, and that it was arrived at through a misconception of the law and the facts, and from sympathy for a woman of good repute, who it decided had been subjected to false accusations.

> *If the plaintiff remits all of the verdict in excess of $2,000 within thirty days after the rescript in this case is received, motion overruled; otherwise motion sustained, new trial granted.*