Statement of the Case.
NICHOLLS, C. J.
Plaintiff appeals from a judgment of the district court in favor of all the defendants, based upofi the verdict of a jury. The action was brought against Angel Ledoux and her husband, Edmund Pellerin, and against Laurence Martin and her husband, Joseph Pellerin, praying for a solidary judgment against them for damages sustained by reason of certain false and slanderous charges against plaintiff, which he alleges were maliciously originated and circulated by the wives of the said Edward and Joseph Pellerin. The husbands were charged with “having aided and assisted their wives in the utterance, publication, and malicious circulation of the charges, well knowing at the time that they were false and malicious, and calculated to inflict great injury upon him.”
The iDetition contained the usual allegations made in actions of this character.
Plaintiff averred that he was engaged to be married to a near relative of the defendants, with whom they were not on friendly terms, and disliked, and they circulated the said slanderous charges against him in order to ruin his character and rexmtation, and to place an obstacle in the way of his marriage.
Laurence .Martin and her husband answered. They pleaded the general issue. They denied having ever originated, propagated, or repeated the alleged slanderous words, rumors, or utterances set forth in plaintiff’s petition, or even any in the least injurious to or prejudicial to his person or character. They averred that some similar rumors or statements were made and uttered to respondents by others, not publicly nor maliciously, but rather in a private manner; that they at no time repeated, spread, or even gave credence to same, but simply made inquiry from persons whom they honest?/ believed were interested as to whether or not such rumors or statements were in fact being uttered or circulated by others, but not in the least asserting any such matters or rumors to be true, nor even insinuating a willingness to believe anything of the sort.
Angel Ledoux and her husband made a similar defense. Edmund and Joseph Pellerin are brothers. They are brothers of the half blood of the young lady to whom plaintiff was engaged to be married, and whom defendants say in their brief that he has since married.
The testimony given by Mrs. Edmund Pellerin to the effect that the statements of which plaintiff comiflains were made to her by another person as a matter of fact has not been disproved. The complaint, therefore, that she originated the charge made against the plaintiff, fails. . Mrs. Edmund Pellerin communicated what she had heard to Mrs. Paul Broussard, a married sister of the young lady to whom plaintiff was engaged, for the purpose, as she told her, of having it communicated by her to her mother, Mrs. Adolphe Pellerin, then a widow. The statements made in regard to the plaintiff were of the most serious character. These reports finally reached the young lady herself, but the testimony does not disclose from whom she first heard them. She refers to a conversation at Breaux’s Bridge with a person by the name of Bulliard, in which he spoke of them to her, but she had evidently been told of them before that conversation. The presumption is that she had heard of them from her mother, Mrs. Adolphe Pellerin, or her sister, Mrs. Paul Broussard, while on a visit to Breaux’s Bridge, where they lived. Her usual residence was at Crowley, La., in *401 the family of Auguste Ledoux, who had married one of her sisters. On her return to Crowley she informed her brother-in-law what she had been told, and he immediately reported the same to the plaintiff. The latter and Auguste Ledoux went' immediately to Breaux’s Bridge to trace the reports to their origin. They called upon Mrs. Edmund Pellerin, and also upon her sister, Mrs. Joseph Pellerin. The former told them that reports against plaintiff were made to her by a man who occupied the same seat with her in the car as she was going from Lafayette to Jennings on a visit to her mother. She had never met him before, and in the course of the conversation with her on that occasion he asked her name, and whether she was not related to the young lady who was engaged to the plaintiff, and, receiving an affirmative reply, he said he was sorry, and in that connection made to her the statements complained of. Auguste Ledoux, present at the interview, testified that on receiving this account from Mrs. Edmund Pellerin, plaintiff told her, “Mrs. Pellerin, you have done nothing but your duty, because, if I had a sister, and this matter came up, I would have done the same thing.”
Mrs. Edmund Pellerin testified that later her codefendant Mrs. Joseph Pellerin asked her whether she had not heard this report, and she replied that she had. Mrs. Joseph Pellerin herself had evidently been informed of the report relative to plaintiff by Mrs. Paul Broussard or Mrs. Adolphe Pellerin, and not by Mrs. Edmund Pellerin. The latter seems to have acted very circumspectly and discreetly in not spreading it. The report does not seem to have gone beyond the Pellerin family until Bouilliard, whose wife was herself one of that family, mentioned the matter to the young lady herself in presence of one or more male persons, not members of it. If Mrs. Edmund Pellerin was blameless in informing Mrs. Paul Broussard of the statement which she had heard on the railroad car, she could not properly be held responsible for the subsequent indiscretion or improper action of some other member of the family.
We are satisfiéd from the evidence that the act of Mrs. Edmund Pellerin in communicating to Mrs. Paul Broussard what she had heard was not done maliciously, or to injure any one, but, on the contrary, from a sense of duty to her husband’s family and her own. Had the facts been such as had been represented to her, and had she remained silent, she would have unquestionably been bitterly reproached for her course. She did not know the plaintiff, or anything about him. All that she did was to place matters before the family, so that they could be inquired into and-investigated by those more nearly and directly concerned than she was.
Plaintiff refers to the decision of this court in Buisson v. Huard, 106 La. 777, 31 South. 293, 56 L. R. A. 296, as sustaining his position, but the particular language he relies upon is found in a quotation of authorities from Odgers’ work on Libel, and is not that of this court; and, besides that, the language must be read in connection with what precedes and follows it. It is true the author said that, when a person makes an injurious statement in regard to another, in order to bring it under protection as being a “privileged” communication “he must have believed in the truth of the statements at the time he made ,them,” but this is followed immediately by the declaration: “If a man knowingly makes a false charge against his neighbor, he cannot claim privilege. It can never be his duty to circulate lies.”
The latter sentence limits and qualifies the too- broadly stated proposition that a man repeating statements must, in order to be justified in so doing, have believed in the truth of the same at the time he made them. It can be readily understood that there are many reports received from others as to the truth of which the party hearing them is entirely ignorant, and is in no position to form an opinion, but which, from the very fact of being in existence, call for investigation and inquiry, as the truthfulness or untruthfulness of the same will most closely affect the future of those related to us by ties of relationship and affection. Of the correctness of this, the very ease at bar furnishes an illustration. With respect to charges which originate with the party making and circulating them the rule is much stricter.
There is even less ground for complaint against Mrs. Joseph Pellerin than there is against her sister-in-law. She merely discussed within the family circle—as she naturally would—a report in which the family *403 would be greatly concerned should it turn out to be true. Ashton v. Grucker, 48 La. Ann. 1194, 20 South. 738. Neither of the ladies involved in this litigation pretended to know anything as to the truth of the report. We do not understand plaintiff to claim that he has sustained the allegations of the petition as to either Edmund or Joseph Pellerin. This ease falls under the rule announced in Baysset v. Hire, 49 La. Ann. 904, 22 South. 44, 62 Am. St. Rep. 675, and Buisson v. Huard, 106 La. 768, 31 South. 293, 56 L. R. A. 296.
For the reasons assigned, the judgment appealed from is hereby affirmed.