MAYTAG v. CUMMINS.

(Circuit Court of Appeals, Eighth Circuit. July 8, 1919.)

No. 4996.

1. LIBEL AND SLANDER ⬤⟾28—ACTION FOR SLANDER—REPETITIONS BY THIRD PERSONS.

Voluntary and unauthorized repetitions of a slander by third persons, current rumors and reports thereof and damages flowing therefrom, are not regarded by law as the natural or probable consequences of the original utterance of the slander.

2. LIBEL AND SLANDER ⬤⟾28, 101(1)—ACTIONS FOR SLANDER—MEASURE OF DAMAGES.

The legal presumption is that a slander will not be repeated, and that its unauthorized repetition and current rumors and reports of it and the damages therefrom are not to be anticipated by the originator, and are not the natural or probable consequences thereof, but the proximate cause of such damages is the illegal intervening repetition or the making by third persons of the current reports and rumors.

3. APPEAL AND ERROR ⬤⟾1053(2)—ERRONEOUS ADMISSION OF EVIDENCE—EFFECT OF SUBSEQUENT WITHDRAWAL.

The general rule is that if evidence has been erroneously admitted during the trial the error is cured by the subsequent withdrawal of the evidence before close of the trial or by a clear instruction to disregard it, but when it appears from the record that it made such a strong impression on the minds of the jury that the subsequent withdrawal or instruction probably failed to eradicate it, the defeated party is entitled to a new trial.

Stone, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Action at law by F. I. Cummins against F. L. Maytag. Judgment for plaintiff, and defendant brings error. Reversed.

Frank R. Aikens, of Sioux Falls, S. D. (Harold E. Judge and Charles P. Bates, both of Sioux Falls, S. D., on the brief), for plaintiff in error.

J. U. Sammis, of Sioux City, Iowa (Shull, Gill, Sammis & Stilwell and E. E. Wagner, all of Sioux City, Iowa, on the brief), for defendant in error.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

SANBORN, Circuit Judge. This is an action for damages for slander. During September, October, November and a part of December, 1914, F. I. Cummins, the plaintiff below and so termed herein, was the assistant general manager and was discharging the duties of traffic manager, and F. L. Maytag, the defendant below and so called herein, was the president, of the South Dakota Central Railroad Company. Mr. Kirby and Mr. McArthur were stockholders and directors of that company, and Mr. Kirby was its general counsel. On March 5, 1915, the plaintiff sued Maytag, the defendant, for $100,000 damages for publishing certain alleged slanders of him. The defendant answered by denying many of the averments of the complaint and by pleading that the alleged slanders were privileged communications made to the officers of the railroad company, to enable them to protect its interests. The complaint set forth five alleged causes of action. Two of them were dismissed before the case was submitted to the jury.

The material averments of the three which went to the jury were: (1) That on or about December 18, 1914, at Sioux Falls, S. D., in the office of Mr. Kirby, in the presence and hearing of Mr. Kirby and Mr. McArthur, the defendant, Maytag, made this false statement, willfully and maliciously, to Mr. Cummins: "I have conclusive evidence that you stole a large amount of coal shipped to the South Dakota Central Railway Company, and diverted the proceeds to your own use. My suspicions have covered a period of several months, and have been confirmed by a report of an investigation instituted by the Interstate Commerce Commission at the time said investigators came to Sioux Falls in the fall of the year 1913;" (2) that in Chicago, Ill., on or about November 20, 1914, the defendant, Maytag, said to E. T. Radcliffe, "How long will it take to check up the records on the 52 carloads of coal that Cummins has gotten away with;" and, (3) that on or about December 17, 1914, at Sioux Falls, S. D., he falsely and maliciously said to E. L. Crimmens, "There has been a systematic steal going on down there (meaning down at the headquarters of the South Dakota Central Railway Company in the city of Sioux Falls, or in its yards and terminals in said city), and I have evidence that he has taken the coal from this list (meaning a list of cars defendant held in his hand at said time) of cars, and that the coal in these cars has been stolen by Cummins."

The trial of the action occupied five days. In the course of it evidence was introduced tending to prove that the defendant had made the statements alleged in the complaint, that after the dates when he was alleged to have made them third persons, without his authority or request, repeated them, and stated that Maytag had made them, and that rumors and reports to that effect were current in Sioux Falls. All the evidence of these repetitions of the defamatory statements, of the reports of such third persons that Maytag had made such statements, and of the current rumors and reports, were objected to by counsel for the defendant on the grounds that they were hearsay, that they were not traceable to or binding upon him, and that they were incompetent and immaterial. These objections

were overruled, exceptions were taken to this ruling, and for several days testimony of these repetitions of the slanderous charges by unauthorized third persons, of their statements that Maytag had made them, and of the current reports and rumors of them was poured into the ears of the jurymen. At the close of the trial, however, the court on motion of counsel for the defendant, struck all this testimony from the record and directed the jury to disregard it.

Counsel for the defendant, Maytag, assigned the rulings admitting this evidence as error, and contend that the injurious effect of it was not cured by the final ruling upon, and direction regarding it. There are seventy other alleged errors assigned. But if the admission of this evidence was error and if the endeavor of the court to withdraw it failed to extract the vice of its admission, there must be a new trial, and this assignment will therefore first be considered.

[1] Is it then the law that evidence of the voluntary and unauthorized repetition of a slander and of rumors and reports thereof by third persons, not under the control of and without the request of the originator, is admissible in an action against him for damages caused by his utterance of it to others?' Counsel for Mr. Cummins contend that this question should be answered in the affirmative: (1) Because the originator of a slander is responsible for the natural and probable consequences of his utterance of it; and (2) because whether the subsequent unauthorized repetition, reports, and rumors are such a consequence is a matter of fact ordinarily to be determined by a jury. Let the proposition that the originator of a slander is responsible for the natural and probable consequences of his utterance of it be conceded. Then the question becomes, Is it the law that the voluntary and unauthorized repetition of a slander by third persons, current rumors and reports thereof, and damages flowing therefrom, are not as a matter of law the natural or probable consequences of the original utterance of the slander, and that therefore evidence thereof is not admissible in an action for damages against the originator? Or is it the law that the question whether or not the voluntary and unauthorized repetition of a slander by third persons, current rumors and reports thereof, not connected by evidence with the originator of the slander, and the damages flowing from such repetitions, rumors, and reports, are the natural and probable consequences of the original utterance is an issue of fact that should ordinarily be submitted to a jury, and therefore evidence of such unauthorized repetitions, rumors, and reports, and the damages therefrom is admissible in evidence against the defendant in an action for slander?

The court below, at the close of the trial, evidently after a searching examination and careful consideration of this matter, decided that the first question must be answered in the affirmative and the second in the negative.

In an action at law this is a court for the correction of errors of law of the trial court exclusively, and the question here is whether or not the court below, by making this ruling, fell into an error of law. The question it became the duty of that court to decide, and

that it now becomes the duty of this court to determine, was not a new one. It was a question which had been repeatedly adjudged by the courts of England and of this country. It was not, and it is not, what in the opinion of the court below or of this court the rule on this subject ought to be if no rule had ever been made by controlling authority or by the general consensus of judicial opinion. But the question was and is: (1) Had the rule of law on this subject become established by the weight of respectable authority or the consensus of judicial opinion when the court below made its ruling? And, if it had been so established, was the ruling of the court below in accordance with such weight of authority or judicial opinion? If it was, that ruling ought not to be held to be erroneous because it was the duty of the court below so to rule, and because a settled and certain rule of law on such a subject as that here in question is far more conducive to the administration of justice than conflicting authorities and that uncertainty which makes it impossible for laymen or lawyers to know what the rule is.

Counsel for the plaintiff, Cummins, in support of their contention that the rule of the court below on this subject is erroneous, insist that their view is supported by these authorities: Merchants' Ins. Co. v. Buckner, 98 Fed. 222, 223, 39 C. C. A. 19; Williams v. Fulks, 113 Ark. 82, 167 S. W. 93; Moore v. Stevenson, 27 Conn. 14; Zier v. Hofflin, 33 Minn. 66, 21 N. W. 862, 53 Am. Rep. 9; Rice v. Cottrel, 5 R. I. 340; Nott v. Stoddard, 38 Vt. 28, 88 Am. Dec. 633; Smith v. Moore, 74 Vt. 81, 52 Atl. 320, 321; Davis v. Starrett, 97 Me. 568, 55 Atl. 519. In the citation, discussion, and treatment of these and other authorities, counsel fail to notice and consider the wide distinction between the line of materiality of evidence in actions for libel and the line of materiality in actions for slander which results from the fact, among others, that the written or printed instrument which contains the libel proves it, and proof of the circulation or repetition of that writing or print does not, so far as it proves what the libel was, run counter to the basic rule against hearsay, while evidence of the repetition of a slander or of rumors or reports thereof by third persons to whom the originator never uttered it is incompetent, under the rule against hearsay, to prove what the alleged slander was, because the repetitions, reports, and rumors are necessarily either simple or multiple hearsay, either hearsay or hearsay of hearsay. Board of Commissioners v. Keene Five-Cent Savings Bank, 108 Fed. 510, 511, 47 C. C. A. 464. This distinction will be further considered later.

We turn to the consideration of the authorities. In addition to those which have been cited attention is called to the facts that in McBride v. Ledoux et al., 111 La. 398, 35 South. 615, 100 Am. St. Rep. 491, it was held that there was no responsibility for an unauthorized repetition of a communication which was privileged when it was made by the defendant, and that in Wheaton v. Beecher, 79 Mich. 443, 44 N. W. 927, the court left to the jury the question whether or not the defendant procured the publication of the defamation in a newspaper when he communicated it to a reporter, but these

two cases failed to rule the issue of law here under consideration. And decisions to the effect that when the defendant publishes a libel in a newspaper, pamphlet, or magazine, evidence of the extent of the circulation thereof may be proved, such as Palmer v. Mahin, 120 Fed. 737, 57 C. C. A. 41, Bigelow v. Sprague, 140 Mass. 425, 427, 5 N. E. 144, Fry v. Bennett, 28 N. Y. 324, 330, Dalton v. District Court, 164 Iowa, 193, 145 N. W. 498, Ann. Cas. 1916D, 695, and Farrand v. Aldrich, 85 Mich. 593, 48 N. W. 628, 630, are also irrelevant, because the extent of such circulation is the result of the publication and of the damage therefrom, which the defendant directly causes by the publication he makes or procures. Turning then to the authorities cited as directly ruling the legal issue in hand against the court below, a careful perusal of the opinions of the courts in those cases discloses these facts: Merchants' Insurance Co. v. Buckner, 98 Fed. 222, 223, 39 C. C. A. 19, was an action for a libel contained in a letter sent by the defendant to the addressee, the secretary of the local board of an insurance company, with the intention on the part of the defendant, which appeared on the face of the letter, that the secretary should communicate its contents to the members of the board. Moore v. Stevenson, 27 Conn. 14, was an action for a libel published in a newspaper by the defendant. Zier v. Hofflin, 33 Minn. 66, 21 N. W. 862, 53 Am. Rep. 9, was an action for a libel published in a newspaper by the defendant. In these three cases the courts held that in these actions for libel, not for slander, the question whether or not the repetition or circulation of the libel, which the terms of the letter in the first case, and the fact that the defendants published the libels in the newspapers, in the other two cases showed that they caused and intended to cause, and the damages therefrom, were the natural and probable consequences of the original publications was a question of fact for the jury, and they admitted evidence thereof. In Zier v. Hofflin, 33 Minn. 66, 21 N. W. 862, 53 Am. Rep. 9, the case of Miller v. Butler, 6 Cush. (Mass.) 71, 74, 52 Am. Dec. 768, decided in 1850, is cited. In that case two defendants sent a libelous private letter to one Bartlett, and the Massachusetts court held that the defendants were responsible "for the natural and probable publicity that would be given to the libel by sending it to Bartlett; not for Bartlett's acts, but for the tendency and consequences of their own acts, in putting the libel into circulation."

But this decision has been overruled by the Massachusetts Supreme Court and the weight of respectable authority, even in actions for libel, runs counter to the decisions just reviewed, and sustains the rule applied to this action of slander by the court below. Thus in Burt v. Advertiser Newspaper Co., 154 Mass. 238, 247, 28 N. E. 1, 6 (13 L. R. A. 97), decided in 1891, the trial court in charging the jury said:

"[The defendant] is not responsible for the injurious acts of another in publishing, but he is under obligation to the plaintiff to take into account and into consideration what will be the natural and probable consequences of his act in putting the libel into circulation. To that extent he is responsible, and only to that extent."

Of this charge the Supreme Judicial Court of Massachusetts in a unanimous opinion, delivered by Judge Holmes (now Mr. Justice Holmes of the Supreme Court) said:

"The general proposition laid down is correct, no doubt, if rightly understood, and it was applied to libel, under what circumstances and with what meaning does not appear, in Miller v. Butler, 6 Cush. 71, 74. But if applied to libel or slander without further explanation it is likely to be misleading, and when put as a qualification of the ruling asked hardly can fail to be so. The meaning which naturally would be conveyed to the jury is that, although a particular republication cannot be recovered for, damages may be enhanced by the general probability of unlawful republications. This is not the law. Wrongful acts of independent third persons, not actually intended by the defendant, are not regarded by the law as natural consequences of his wrong, and he is not bound to anticipate the general probability of such acts, any more than a particular act by this or that individual. Hastings v. Stetson, 126 Mass. 329, 331 [30 Am. Rep. 683]; Shurtleff v. Parker, 130 Mass. 293, 296 [39 Am. Rep. 454]; Hayes v. Hyde Park, 153 Mass. 514 [27 N. E. 522, 12 L. R. A. 249]; Leonard v. Allen, 11 Cush. 241, 246."

And the general rule, even in libel cases seems to be that the publisher of a libel is not liable for the voluntary republication or repetition thereof by others without his request or authority, or for current rumors or reports thereof, or the damages therefrom. Gough v. Goldsmith, 44 Wis. 262, 265, 28 Am. Rep. 579; McDuff v. Detroit Evening Journal Co., 84 Mich. 1, 47 N. W. 671, 673, 22 Am. St. Rep. 673; Age-Herald Publishing Co. v. Waterman, 188 Ala. 272, 287, 66 South. 16, 20, 25, Ann. Cas. 1916E, 900; 25 Cyc. 506, note 82.

[2] But this action is for slander, not for libel, for spoken, not for written or printed, words. Evidence of repetition by third persons without the request of the originator, and of rumors and reports of the scandal, is as to the substance and form of the alleged slander hearsay, or hearsay of hearsay, and it falls under the ban of the rule against hearsay, while the form and substance of a libel is legally evidenced by the writing or print that contains it. The injurious natural and probable consequences of slander are far less than those of libel. Slander is but the utterance of words. That utterance is ordinarily made in the hearing of one or of a few persons. That utterance is often, it is probably not too much to say that it is generally made in private, in confidence, in the faith that it will not be and the intention that it shall not be repeated. This belief and intention is not without foundation in reason and in law. It is an illegal act to repeat a slander, an act for the damages from which the victim of the repetition may maintain an action against the repeater. The basic legal presumption on which law and the general action of mankind is based is that men will refrain from unlawful acts, will obey the law and discharge their duties, and the great majority do so. So it is that the legal presumption is that a slander will not be repeated, and that its unauthorized repetition and current rumors and reports of it and the damages therefrom are not to be anticipated by the originator, and are not the natural or probable consequences thereof. But the proximate cause of such damages is the illegal intervening repetition or the making by third persons of the current reports and rumors which turn aside the natural sequence of events and isolate

the damages from the unauthorized repetition from those from the original slander. Again, a slander is preserved in no fixed or permanent form. It ordinarily soon fades out and is forgotten like the sound that carries it. But one who publishes a libel in a newspaper or pamphlet which circulates among many people, or even in a private letter, thereby places it in permanent form where it will be more likely to continue in existence and to be read by many people, and where he causes it to be published in a newspaper or magazine he thereby evidences his intention that the readers shall read it, so that the natural and probable effect of publishing a libel is far more permanent, extensive, and injurious to the victim than the mere speaking of the words it contains to one or more persons. These striking differences in the line between material and immaterial evidence in actions of libel and slander, and in the difference between the natural and probable consequences of them, is evidenced in the decisions of the courts and in the text-books.

Thus Odgers in his fifth edition of his work on Slander and Libel, at page 177, states the distinction in this way:

"If I am in any way concerned in the making or publishing of a libel, I am liable for all the damages that ensue to the plaintiff from its publication, but if I slander A., I am only liable for such damages as result directly from that one utterance of my own lips. If B. hears me and chooses to repeat the tale, that is B.'s own act, and B. alone is answerable should damages to A. ensue."

Newell, in the third edition of his book on Slander and Libel, published in 1914, which is the latest and most authoritative American text-book on this subject at hand, states the rule on that subject in actions for libel, and the marked difference between that rule and the rule in actions for slander in the same terms.

When we turn to the decisions of the courts on the subject under consideration, only five authorities in actions for slander have been cited, or have come to our attention, which seem to sustain the position that the ruling of the court below was erroneous. These are Williams v. Fulks, 113 Ark. 82, 85, 167 S. W. 93, Rice v. Cottrel, 5 R. I. 340, 342, Nott v. Stoddard, 38 Vt. 25, 28, 88 Am. Dec. 633, Smith v. Moore, 74 Vt. 81, 52 Atl. 320, 331, and Davis v. Starrett, 97 Me. 568, 55 Atl. 516, 519. But Williams v. Fulks does not rule the question. While at page 85 of 113 Ark., at page 94 of 167 S. W., the Supreme Court of that state held that evidence of the fact that the slander had been generally circulated in the community as the result of the slanderous words was competent to show the extent of the damages, it added:

"The question whether the defendants are responsible for damages resulting from mere repetition by other persons is not properly raised in this case, and the court will not undertake to decide it."

The four other cases run directly counter to the ruling of the court below and to the rule established and sustained by the authorities which follow: Townsend on Slander and Libel, § 114; Ward v. Weeks, 7 Bing. 211, 215, 331; 131 English Reprint, 81, 83; Hastings v. Stetson, 126 Mass. 329, 331, 30 Am. Rep. 683; Stevens v. Hartwell, 11 Metc. 542, 549; Elmer v. Fessenden, 151 Mass. 359, 362, 24 N. E.

208, 5 L. R. A. 724; Terwilliger v. Wands, 17 N. Y. 54, 59, 72 Am. Dec. 420; Olmsted v. Brown, 12 Barb. (N. Y.) 657, 661, 665; Fowles v. Bowen, 30 N. Y. 20, 22; Bassell v. Elmore, 48 N. Y. 561, 564; Carpenter v. Ashley, 148 Cal. 422, 426, 83 Pac. 444, 7 Ann. Cas. 601; Prime v. Eastwood, 45 Iowa, 640, 644; Zurawski v. Reichmann, 116 Iowa, 388, 389, 90 N. W. 69; Hereford v. Combs, 126 Ala. 369, 380, 28 South. 582, 585; King v. Sassamann (Tex. Civ. App.) 54 S. W. 304; Cameron v. Cockran, 2 Marv. (Del.) 166, 42 Atl. 454, 457.

In Leonard v. Allen, 11 Cush. 241, 246, a judgment in an action for slander, in that the defendant charged the plaintiff with burning a schoolhouse, was reversed because evidence was admitted that after the fire it was currently reported in the neighborhood that the defendant had charged the plaintiff with the burning, and the Supreme Judicial Court of Massachusetts said:

"The objection arises from the want of proof that the defendant had circulated those charges which were abroad generally in the community. The evidence, so far as it went to connect the defendant with them, was mere hearsay. It proved the existence of current reports that the defendant had made such a charge, but it went no further."

This statement is equally true of the evidence of the repetitions, rumors, and reports in the case at bar.

In Carpenter v. Ashley, 148 Cal. 422, 426, 83 Pac. 444, 7 Ann. Cas. 601, the Supreme Court of that state held that the trial court rightly excluded from the evidence, newspaper articles which purported to state slanderous words the defendant was charged with having spoken.

In Hastings v. Stetson, 126 Mass. 329, 331, 30 Am. Rep. 683, Chief Justice Gray, afterwards Mr. Justice Gray of the Supreme Court, delivering in 1879, the unanimous opinion of the Supreme Judicial Court of Massachusetts, stated the law on this subject in these words:

"It is too well settled to be now questioned that one who utters a slander is not responsible, either as on a distinct cause of action or by way of aggravation of damages of the original slander, for its voluntary and unjustifiable repetition, without his authority or request, by others over whom he has no control, and who thereby make themselves liable to the persons slandered, and that such repetition cannot be considered in law a necessary, natural, or probable consequence of the original slander."

It is the endeavor of writers of text-books to state the rules of law as they have been established by the decisions of the courts at the times they respectively write. Newell, in the Third Edition of his work on Slander and Libel, published in 1914, stated the rule on this subject as he found it to be at that time, in the words of Chief Justice Gray, which have just been quoted.

The result of this review of authorities on this subject is that, when the trial court ruled that the law was that the voluntary and unauthorized repetition of the slander without the request or intention of the originator by persons over whom he had no control, the current reports and rumors thereof, and the damages flowing therefrom as a matter of law were not the natural or probable consequences of

the original slander, that evidence thereof was not admissible against the defendant, and instructed the jury to disregard it, there had been four decisions to the contrary, one from Rhode Island (Rice v. Cottrel, 5 R. I. 340, 342, rendered in 1858), two from Vermont (Nott v. Stoddard, 38 Vt. 25, 28, 88 Am. Dec. 633, and Smith v. Moore, 74 Vt. 81, 52 Atl. 320, 331, rendered in 1855 and 1902, respectively), and one from Maine (Davis v. Starrett, 97 Me. 568, 55 Atl. 519, rendered in 1903), while the rule of law which the trial court announced and applied had been the law in all the courts in England ever since the decision in Ward v. Weeks, in 1830, had been declared by Chief Justice Gray in 1879, in Hastings v. Stetson, 126 Mass. 329, 331, 30 Am. Rep. 683, and by Mr. Newell in 1914, to be too well settled to be questioned, and had been adopted, sustained, and applied to the trials of actions in slander by the courts of the populous communities of New York, Massachusetts, California, Iowa, Texas, Alabama, and Delaware. In view of this great weight of authority, of this general consensus of judicial opinion and adjudication which established and maintained the rule of law which the court below followed and applied in its final ruling, that ruling cannot be held to be error, but must be affirmed as the law of this case.

The unavoidable result of this conclusion is that the rulings of the court below during the progress of the trial admitting the evidence of the repetitions, rumors, and reports of the slander during the several days occupied in the introduction of evidence were erroneous, and the defendant demands a new trial on that account. The only answer to that demand is that the admission of this evidence was not prejudicial to him, because at the close of the trial the court on his motion withdrew it and instructed the jury to disregard it.

[3] The general rule is that if evidence has been erroneously admitted during the trial, the error of its admission is cured by its subsequent withdrawal before the close of the trial or by a clear peremptory instruction to the jury to disregard it. Pennsylvania Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141; Specht v. Howard, 16 Wall. 564, 21 L. Ed. 348; Washington Gaslight Co. v. Lansden, 172 U. S. 534, 555, 19 Sup. Ct. 296, 43 L. Ed. 543; Turner v. American Security & Trust Co., 213 U. S. 257, 267, 29 Sup. Ct. 420, 53 L. Ed. 788; Union Pacific Ry. v. Thomas, 152 Fed. 365, 371, 81 C. C. A. 491; Balaklala Copper Co. v. Reardon, 220 Fed. 585, 587, 136 C. C. A. 186; Oates v. United States, 233 Fed. 201, 204, 147 C. C. A. 207; Looker v. United States, 240 Fed. 932, 935, 153 C. C. A. 618.

But there is an exception to this rule. It is that, where the appellate court perceives from an examination of the record that the inadmissible evidence made such a strong impression upon the minds of the jury that its subsequent withdrawal or the instruction to disregard it probably failed to eradicate the injurious effect of it from the minds of the jury, there the defeated party did not have a fair trial of his case, and a new trial should be granted. Waldron v. Waldron, 156 U. S. 361, 381, 383, 15 Sup. Ct. 383, 39 L. Ed. 453; Armour v. Kollmeyer, 161 Fed. 78, 88 C. C. A. 242, 16 L. R. A. (N. S.) 1110; Chicago, Milw. & St. Paul Ry. Co. v. Newsome, 174 Fed.

394, 396, 98 C. C. A. 1; Knickerbocker Trust Co. v. Evans, 188 Fed. 549, 566, 567, 110 C. C. A. 347. This case clearly falls under the exception. One of the chief purposes of providing a judge learned in the law to preside over trials by jury, and one of the principal duties of such a presiding judge, is to exclude from the evidence, and consequently 'from the knowledge and consideration of the jury, matters which his learning, experience, and judgment enable him to know are irrelevant and immaterial to the issues on trial. Such matters tend to draw the attention of the jury away from a consideration of the real issues to a contemplation of other questions, and unconsciously to lead them to render their verdict on the real issues in accordance with their views upon false issues. Knickerbocker Trust Co. v. Evans, 188 Fed. 549, 566, 567, 110 C. C. A. 347. Trials of actions for slander and libel are peculiarly susceptible to evil influences from irrelevant and immaterial matters, as are all actions which excite unusual personal feeling or public interest, so that it is peculiarly desirable that such matters should not creep into the evidence in cases of this character. The record in this case discloses the fact that much immaterial and irrelevant evidence, aside from the testimony relative to the repetitions, rumors, and reports of the slander, was introduced in evidence before the jury, and that for several days a great mass of evidence on the latter subject was daily accumulating in their hearing under the erroneous first ruling of the court upon this subject. The result of this trial was a verdict against the defendant in this action for slander for the unusually large sum of $22,500. A careful review of the record leaves no doubt that the immaterial and irrelevant matter introduced in evidence before the jury made so strong an impression upon their minds that its evil effect was not and could not be eradicated by the court's attempted withdrawal and its instruction to disregard it, and that this irrelevant matter enhanced the amount of the verdict and deprived the defendant of a fair trial.

There are many other alleged errors assigned by the defendant, but under the rule of law here affirmed, the course of a new trial will differ so radically from that of the trial that has been considered that even if some of these alleged errors are well assigned they are not likely to be committed again, and it would be a useless task to state and review them now. Let the judgment below be reversed, and let a new trial be granted.

STONE, Circuit Judge. I concur in the result because I agree that the evidence of repetition in this case was such that under the present circumstances its effect could not be removed from the jury even by the clear, forcible charge of the court, and this left in their minds the effect of the evidence with no aid in properly considering it from the court through the charge, or counsel through argument.

I dissent from the rule that one who originates a slander cannot be held for damages arising from repetitions which are the natural and probable consequences of the original utterance. The majority opinion bases this rule upon two grounds, to wit: First, that it is a

settled rule of law; and, second, that there exists a difference between libel and slander which cannot justify the rule in cases of slander. I am unable to assent to such views. Of 12 witnesses 10 were interrogated along the same line, which may be illustrated by the following from the testimony of witness Crimmen:

"Q. Was it reported and did you hear the reports on the streets of Watertown and Sioux Falls, during the month of December, 1914, that Mr. Maytag had charged Mr. Cummins with stealing coal, or words to that effect? A. Yes, sir; I did."

The interrogation of the other two was as follows:

C. A. Wooley: "Q. Following the 18th day of December, 1914, and in the early part of 1915, was it currently reported in Sioux City, to your knowledge, that Mr. Cummins had been discharged from the South Dakota Central Railway Company because of being charged with irregularities in connection with the loss of coal? A. I heard the statement. Yes, sir."

A. E. Ayres: "Q. On or about that time, Mr. Ayres, did you hear rumors in Sioux Falls to the effect that Mr. Cummins had been discharged by reason of having been charged by Mr. Maytag with theft or stealing coal and other property from the railroad company? A. I heard that Mr. Cummins had been discharged for a cause, but I didn't hear by what agency or by whom.

"Q. What was the cause as you heard it? A. Shortage in his accounts."

The decisions are in conflict as to whether evidence of unauthorized and unprivileged repetitions of a defamation by third parties, or evidence of rumors and reports along the line of the defamatory statements are admissible, as affecting the amount of damages. The cases excluding such evidence are based upon the theory that damage flowing from such repetitions, rumors, or reports is not the proximate result of the original utterance, unless authorized or intended by defendant. This is an application to the law of defamation of the general rule that the intervention of an independant illegal act breaks the causal chain, since the defendant cannot be held to have anticipated and (without other evidence thereof) intended the unlawful act of another as the consequence of his wrong. The rejection of the above character of evidence in defamation cases is followed in England, Alabama, California, Massachusetts, New York, and Wisconsin. Ward v. Weeks, 7 Bing. 211; Age-Herald Publishing Co. v. Waterman, 188 Ala. 272, 287, 66 South. 16, Ann. Cas. 1916E, 900; Hereford v. Combs, 126 Ala. 369, 380, 28 South. 582; Carpenter v. Ashley, 148 Cal. 422, 426, 83 Pac. 444, 7 Ann. Cas. 601; Burt v. Advertiser Newspaper Co., 154 Mass. 238, 28 N. E. 1, 13 L. R. A. 97 (opinion by Mr. Justice Holmes); Elmer v. Fessenden, 151 Mass. 359, 362, 24 N. E. 208, 5 L. R. A. 724 (opinion by Mr. Justice Holmes); Shurtleff v. Parker, 130 Mass. 293, 296, 39 Am. Rep. 454; Hastings v. Stetson, 126 Mass. 329, 331, 30 Am. Rep. 683; Leonard v. Allen, 65 Mass. (11 Cush.) 241; Stevens v. Hartwell, 11 Metc. 542; Bassell v. Elmore, 48 N. Y. 561, 564; Fowles v. Bowen, 30 N. Y. 20; Terwilliger v. Wands, 17 N. Y. 54, 72 Am. Dec. 420; Austin v. Bacon, 49 Hun, 386, 3 N. Y. Supp. 587; Olmsted v. Brown, 12 Barb. 657; Gough v. Goldsmith, 44 Wis. 262, 28 Am. Rep. 579. None of the above cases is based upon any presence of hearsay evidence, nor any difference between libel and

slander affecting this question. The sole ground is as stated above. That this is the only ground is further shown by such cases as Fowles v. Brown, 30 N. Y. 20, 22, cited above and in the majority opinion, where the originator of the slander was held liable when the repetition was lawful, being privileged. The Delaware case, Cameron v. Cockran, 2 Marv. 166, 42 Atl. 454, cited in the majority opinion, was from the superior court. The two Iowa cases cited, Zurawski v. Reichmann, 116 Iowa, 388, 90 N. W. 69, and Prime v. Eastwood, 45 Iowa, 640, do not hold that such evidence is never admissible, but that it is inadmissible unless "the circumstances under which it was repeated" be shown, clearly intimating that under some circumstances it would be admissible. The Texas case cited, King v. Sassaman (Tex. Civ. App.) 54 S. W. 304, contained no such question. The point there was one of variance between words said and those proven. As to that the court said defendant was liable for what he had actually said, not for what others might say he had said. The opposed doctrine that such evidence is admissible in defamation cases is based upon the theory that defendant is responsible for the natural and probable consequences of his utterance and whether the subsequent repetition or rumor is such a consequence is a matter of fact ordinarily to be determined by the jury. This view is supported in the federal courts, Arkansas, Connecticut, Minnesota, and Rhode Island. Merchant's Ins. Co. v. Buckner, 98 Fed. 222, 39 C. C. A. 19 (6th C. C. A., opinion by Mr. Justice Day); Williams v. Fulks, 113 Ark. 82, 167 S. W. 93; Moore v. Stevenson, 27 Conn. 14; Zier v. Hofflin, 33 Minn. 66, 21 N. W. 862, 53 Am. Rep. 9; and Rice v. Cottrel, 5 R. I. 340. In McBride v. Ledoux, 111 La. 398, 35 South. 615, 100 Am. St. Rep. 491, it was held that there was no responsibility for an unauthorized repetition of a communication which was privileged when made by defendant. In Wheaton v. Beecher, 79 Mich. 443, 44 N. W. 927, it was left to the jury to determine whether the defendant "procured" the publication of the defamation in a newspaper when he communicated it to a reporter of that paper. With the decisions of respectable jurisdictions conflicting I see no reason for deciding that the matter has been authoritatively settled. This very case illustrates the doubtfulness of the question, for a capable trial judge first admitted and then excluded this testimony. While the question was not and is not a settled one, yet if it were true that all of the courts which had spoken had been one way that should not control in this jurisdiction, where there had never been any expression, if that view of the law were regarded as incorrect. Not infrequently federal courts refuse to follow earlier expressions of the highest courts of a state within the same territorial jurisdiction. If this conflict of law in the same jurisdictional limits is justifiable because it is the duty of each court to decide the law as its wisdom and conscience dictate, how much more should this be done where the authority relied upon is entirely from outside. This is peculiarly so in actions sounding in tort. Men may deal with titles and make contracts in view of what they think the law to be, as established by decisions, but they do not commit torts on any such basis. As no

decision controlling in this circuit exists, and as decisions outside the circuit conflict, this seems to me an instance where the justice of the contending views should be examined and a decision reached on that basis alone.

While recognizing the plausibility of the rule rejecting this evidence and the high authority supporting that view, I cannot think that it is correct. All compensatory damages are based upon injury actually suffered by the plaintiff because of defendant's wrongful act and the amount of such damages by the extent of the injury. The injury from defamation is, as to extent, unique in one important feature. Usually the extent of injury depends almost entirely upon the extent of the circulation of the defamation. This has been recognized in this court (Palmer v. Mahin, 120 Fed. 737, 746, 57 C. C. A. 41), and in other jurisdictions, including some which hold third party repetitions, rumors, and reports inadmissible. Bigelow v. Sprague, 140 Mass. 425, 5 N. E. 144 (opinion by Mr. Justice Holmes); Fry v. Bennett, 28 N. Y. 324, 330; Dalton v. Dist. Court, 164 Iowa, 187, 193, 145 N. W. 498, Ann. Cas. 1916D, 695; and Farrand v. Aldrich, 85 Mich. 593, 48 N. W. 628. The very decisions which exclude this evidence when "unauthorized" by the defendant concede its importance and approve its admission if it is affirmatively shown that the defendant authorized or "intended" the repetition, rumor, or report. Clearly there should be very substantial reason for excluding evidence so vitally bearing upon the important inquiry as to the extent of injury and ensuing damages. The most fundamental rule in the law of proximate cause would not only sanction but compel the admission of this character of evidence. That rule is that a wrongdoer is answerable for the natural and probable results of his act, or, as often expressed, for such results as he might reasonably have anticipated. Certainly the repetition of a defamation or its growth into a rumor or current report is a natural and probable result of its utterance and to be reasonably anticipated. That unfortunate result as surely follows and spreads as do the ever-widening circles from a stone thrown into water. The human weakness to repeat the unusual, the salacious, and the scandalous is an ever-present agency which common knowledge recognizes as needing only the impetus of a defamatory statement to awaken into full activity. The actually existing, well-known tendency and result should not, in my judgment, be obliterated by any presumption that persons will not commit an unlawful act by repeating slander. Why then should one who *starts* a false, malicious attack upon the character of a man or woman, with full knowledge that it will spread like wild fire, beheld innocent of the general conflagration?

The reason given for this unusual freedom from responsibility is that there is a corollary to the above general rule to the effect that the intervention of an independent wrongful agency breaks the legal causal connection, and that the unprivileged repetition of a defamation is such an agency. Such a rule exists and such a repetition is an independent wrongful agency. There is a prima facie ground therefore for the application of the rule. But nowhere is it more im-

portant to apply the basic axiom that "reason is the soul of the law" than when a rule of law, apparently applicable to a set of facts, results in seeming injustice. This necessity is accentuated when the set of facts under consideration is not merely vagrant and unusual, but is typical of a large and important class of frequent recurrence. The reason and history of this rule require examination to determine whether a situation possibly within its letter is within its real intent and spirit.

Sedgwick in his work on Damages (9th Ed.) § 111b, has well said that—

"The legal distinction between what is proximate and what is remote is not a logical one, nor does it depend upon relations of time or space; it is purely practical, the reason for distinguishing between proximate and remote causes being a purely practical one."

The practical reason for treating the intervention of a wrongdoer as an insulation breaking the causal connection is that such wrongdoer is nearer to the resulting injury, may himself be held in damages therefor, and the plaintiff should not be given a duplicate recovery. The origin and usual application of this rule connect it with the common character of tort where the injury is a single occurrence, as harm to person or property. As so applied this rule ordinarily accords well with the demands of justice. We are not concerned here with instances where the fault of the intervening wrongdoer was simply non-action in failing to nullify the effect of the wrongful act before it reached the plaintiff. However, a well-known exception or parallel rule is that where the original wrongdoer intended the result actually brought about by the intervening wrongdoer he is liable. The considerations of practical justice forming these rules seem to be as follows: That plaintiff should be allowed one complete recovery for an injury wrongfully inflicted; that this requisite is ordinarily sufficiently afforded when it is given against the active wrongdoer nearest in the causal sequence to the injury without looking further back; that it is unjust to permit a wrongdoer, who intended the injury and foresaw the intervention of the later wrongdoer, to escape liability. Keeping in mind these practical reasons for practical rules designed to work justice, the application of those rules to the tort of defamation may be tested. Having in view cause and effect, this tort is often unlike any other. Unless the entire claimed damage is special, the plaintiff is seeking to recover for the general damage done to his reputation. Knowing, as reasonable men, that this depends largely upon how widely the defamation has been spread, how can the jury intelligently gauge that damage, or how can the court later rule upon the justice of the amount of verdict if there be denial of all evidence upon that point? How is the plaintiff to be accorded his complete recovery, or how is the defendant to be protected against excessive recovery if neither party can show the extent of the injury? Another suggestion bearing upon the practical, substantial justice of the situation is this: The wider the circulation, the greater the damage, yet there is a correspondingly increasing difficulty, often impossibility, of the plaintiff being able to locate, for purposes of legal sat-

isfaction, all or any appreciable number of the talebearers whose busy tongues have been set wagging to his grievous injury by defendant's act. Leonard, C., in Bassell v. Elmore, 48 N. Y. 561, 568. So that, if the theory of the rule that responsibility ceases with the injury to his reputation in the minds of those to whom defendant communicated the defamation is really carried into practice, the plaintiff could require of the defendant but a minimum of the injury he had received. Yet every one knows that none of this entire injury would have been received had not the defendant set rolling the growing ball of defamation which has finally crushed the fairest one of plaintiff's possessions. The publication may have been made under circumstances designed and shaped to prevent or confine its further circulation, and such are for the jury to consider. On the other hand, if intent is to govern, why exclude the operation of a fundamental principle used throughout the law in determining intent, namely, that one is presumed to know and to intend the natural and probable consequences of his act. The question here is not of punitive damages and evil motive, but of compensatory damages and legal intent. Since the defamer must know what all men know, that the natural and probable consequence of publishing a defamation is its repetition and wide circulation, he should be held to intend that result and be held responsible for it. If he is thus responsible the measure of that responsibility lacks a gauge of fact, unless the extent of that repetition or circulation can be shown.

Here an honorable man has been, the jury found, falsely and maliciously branded as a felon by his employer and in connection with that employment. The charge meets him when he seeks employment, shames his children among their schoolmates, ruins his credit, and blights the well-earned reputation of a lifetime. Defendant made the statement to seven different persons, of whom four testified affirmatively that they did not believe the charge, one denies hearing such a charge, and two were not witnesses. If defendant is liable only for the injury done plaintiff's reputation in the minds of these seven persons, the court would be puzzled, even under the existing liberal rule as to amount of verdicts in defamation cases, in upholding the jury assessment of $22,500. The effect upon these seven hearers is not the gist of plaintiff's injury. It is: That having before borne a good name, thereafter this charge originated by defendant became common rumor, so that it was widely known that defendant had made such an accusation, and that because thereof, he (plaintiff) sought employment in vain, he suffered anguish on account of his children being shamed among their schoolmates, his credit was ruined, and his reputation besmirched. Whether this rule be applicable where the defendant is a mere *conveyor* of the defamation as distinguished from the *originator* thereof we need not inquire, because here the defendant was the originator. Nor do I think it necessary that the testimony show that any of the particular persons named in the petition as hearing the slander repeated it to others. Defendant is shown to have been the originator of the slander, and the repetitions covered by the testimony gave him as the origin. He sent out the poison, and it

traveled everywhere under the sanction of his name. I cannot doubt that the rumors and reports which injured plaintiff are parts of the stream of which he alone was the source. To hold that this cannot be shown, nor defendant be held responsible therefor, does not meet my ideas of justice. As said by Leonard, C., in Bassell v. Elmore, 48 N. Y. 561, 568:

"A slanderous charge gets in circulation and is many times repeated until it often becomes impossible to trace it so that it shall appear to have been carried directly from the slanderer to the person from whom the pecuniary injury has been sustained by the party complaining. The rule is entirely too favorable for the malicious slanderer. He should be held responsible when it can be proven, as in this case, that the slander uttered did come to the knowledge of some person, who acted upon it to the pecuniary injury of the plaintiff."

It is suggested that in this regard there is a difference between libel and slander, which justifies a difference in rule. No case suggests such a difference, and I see no basis therefor. Material divergencies based on differences between libel and slander should be sparingly made, and only where the basis therefor is very clear, because, as said by Judge Cooley in his work on Torts (3d Ed.) p. 366, "Slander and libel are different names for the same wrong accomplished in different ways." Also see Newell's Slander and Libel (3d Ed.) § 29.