**EVANS v. AMERICAN PUB. C.O. et al.**
(No. 10177.)

Court of Civil Appeals of Texas. Dallas.
June 16, 1928.

Certified to Supreme Court.

1. **Libel and slander ⊜75—Plaintiff, maintaining home in county where he had lived over 20 years, "resided" therein within venue statute relating to libel; "residence;" "domicile" (Vernon's Ann. Civ. St. Supp. 1922, art. 5598b).**

Plaintiff, who, after he became highest executive officer of the Ku Klux Klan and had leased different apartments for himself and family outside state at headquarters of the organization, continued to maintain the home owned by him in the county in this state in which he had lived and practiced his profession as dentist for over 20 years, "resided" in that county within Vernon's Ann. Civ. St. Supp. 1922, art. 5598b, entitling him to bring action for libel therein; words "resided," "residence," and "domicile" being used interchangeably in statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Domicile; Reside; Residence.]

2. **Libel and slander ⊜123(1)—Legal effect of undisputed evidence that speech published in newspaper was voluntary utterance of speaker in no way influenced by newspaper held for court.**

Where undisputed evidence showed that newspaper reporter was present when speech was made at political convention, and that newspaper which published speech consisting of voluntary utterances of speaker in no way influenced making thereof, legal effect of such evidence was for court and not for jury.

3. **Libel and slander ⊜28—Publisher alone is responsible for libelous publication, where slander uttered by speaker is published without speaker's intentional procurement.**

Where printed publication of a slander theretofore uttered by a speaker is occasioned only through independent act of publisher, without any active privity or intentional procurement on part of speaker, publisher alone is responsible for damages resulting from the libelous publication, and speaker is responsible alone for damages resulting from his oral utterances of defamatory words.

4. **Libel and slander ⊜28—Speaker and newspaper publishing speech without speaker's procurement held not jointly liable for alleged defamation.**

Where speech made by chairman of political convention was published by newspaper without intentional procurement of the speaker, speaker and newspaper were not jointly liable for the alleged defamatory publication.

Appeal from District Court, Dallas County; Towne Young, Judge.

Suit by H. W. Evans against the American Publishing Company and another. From a judgment sustaining a plea of privilege, the plaintiff appeals. Reversed and rendered.

Lawther & Pope, of Dallas, for appellant.

Sidney L. Samuels, of Fort Worth, for appellee American Pub. Co.

Crane & Crane and Muse & Muse, all of Dallas, for appellee Crane.

JONES, C. J. This is an appeal from a judgment of a district court of Dallas county sustaining the plea of privilege of the American Publishing Company, to transfer the suit to the district court of Travis county, in a suit instituted in such court by H. W. Evans against American Publishing Company and M. M. Crane, for damages because of alleged slanderous utterances contained in a speech by the Honorable M. M. Crane, while acting as temporary chairman of the Democratic State Convention, at Austin, September 2, 1924, and because of the publication of the alleged slanderous utterances by the American Publishing Company in the Austin American, a daily newspaper published in the city of Austin, Travis county, Tex. M. M. Crane has perfected an appeal from an order of the court overruling his motion to correct the judgment entered on the plea of privilege, so that it would decree the removal only of the suit against the American Publishing Company, and not the suit against him.

For convenience, H. W. Evans, the plaintiff in the suit, will be referred to as appellant, the American Publishing Company will be referred to as publishing company, and M. M. Crane will be referred to by name.

The pleadings, consisting of the plea of privilege of the publishing company and the controverting affidavit of appellant, raise two issues: (a) Was appellant residing in Dallas county, within the meaning of the term "reside" as same is used in our venue law, either at the time of the accrual of the cause of action, or at the time of the filing of the suit? (b) Is there a joint cause of action existing in favor of appellant against the two said parties made defendants in the main suit, it being admitted that M. M. Crane was a resident of Dallas county? The case was tried to a jury, the issues made by the pleadings were submitted, as disputed issues of fact, in the form of special issues, and the findings thereon were favorable to the publishing company. On these findings the court entered judgment removing the case to the district court of Travis county.

Appellant's assignments of error present two issues on this appeal: First, that the uncontradicted evidence indisputably showed that appellant resided in Dallas county, Tex., both at the time of the accrual of the cause of action and at the time of the filing of the suit, and it was error for the court to refuse his requested peremptory instruction. Second, that the undisputed evidence with the

admission of the parties in open court made a prima facie case of the existence of the alleged joint cause of action against the publishing company and M. M. Crane, and it was error for the court to refuse the requested peremptory instruction. If either of these assignments can be sustained, the judgment of the court on the plea of privilege must be reversed.

There is no dispute in the evidence as to appellant's residential status during the periods of time under inquiry. While this evidence was given exclusively by appellant, as a witness in his own behalf, it details a complete history of such status from November, 1922, up to and including August 4, 1925, the date of the filing of this suit, and no question is made of its accuracy. The respective contentions in this respect are solely as to the legal effect to be given this evidence. Epitomized as briefly as possible, the publishing company is a corporation with its domicile in Travis county, Tex. M. M. Crane is a resident of Dallas county. Appellant is a dentist by profession, and in November, 1922, was elected Imperial Wizzard of the Ku Klux Klan, this being the highest executive office of that organization. For over 20 years previous to such election he had practiced his profession in the city of Dallas and lived with his family, now consisting of a wife and three children, in a home owned by him in such city. When appellant became Imperial Wizzard of the Ku Klux Klan, this organization was active in a great many states of the Union, with the headquarters of its chief executive officers in the city of Atlanta, Ga. It was the duty of the Imperial Wizzard to visit the various organizations of his order in the different states of the Union and confer with the officers of subordinate lodges about pending matters. The national headquarters of the Ku Klux Klan were maintained by appellant as Imperial Wizzard in Atlanta until in the spring of 1923, when such headquarters were removed by him to the city of Washington, D. C., where it was still maintained at the time of this hearing. Appellant used his headquarters as a place to transact business of the order and as a place, to use his term, from which he could "radiate" to other sections of the United States where the order called for the personal presence of its Imperial Wizzard. Soon after his election, in company with his wife, he went to Atlanta, leased an apartment, in which they lived while his headquarters were maintained in said city. He placed his mother-in-law in his residence, and with her left his three children; the two older ones, however, spending a great deal of time attending schools in other sections of the country. During the time his headquarters were in Atlanta, by far the larger portion of his time was spent in traveling over different states and conferring with local or state organizations. During this time, Mrs. Evans sometimes went with him and sometimes remained in their apartment. When he moved his headquarters to the city of Washington, he again leased an apartment, which he furnished himself, and in which he installed his family when the children were at home from school. After moving to Washington, he employed a few servants, and, when Mrs. Evans was absent with him, these servants maintained the apartment. His manner of living in Washington was substantially the same as it was in Atlanta, spending only a short time himself in the apartment, and Mrs. Evans at times accompanying him on his various official visits. Very seldon did his personal stay in Washington consist of over two weeks. During each year of this time he would make a few trips to Dallas, and while here would live at his home, usually accompanied by Mrs. Evans. She, however, spent more time in their home in Dallas than he. During all this time he called Dallas his home, qualified to vote here by the payment of poll tax, and always intended immediately to return to his home in said city when his official connection with his order ceased. Just preceding the meeting of the Democratic State Convention in the city of Austin, on September 2d, 1924, he and his wife had spent several days at their home in Dallas, but at the time of the accrual of this cause of action he was on his way to the state of Florida. He never intended to establish a residence in either Atlanta or Washington.

The Thirty-Sixth Legislature at its regular session in 1919 (chapter 87) enacted article 5598b, Vernon's Sayles' Statutes 1922 Supplement. This article is as follows:

"Action for damages for libel or slander shall be brought, and can only be maintained, in the county in which the plaintiff in any such action resided at the time of the accrual of the cause of action, or in the county where the *plaintiff* resided at the time of filing suit, or in the county of the residence of the defendants, or any of them, or the domicile of any corporate defendant, at the election of the plaintiff."

This statute was amended by the adoption of the 1925 codification, and as amended has become section 29 of article 1995, R. S. 1925. This amendment, however, did not become effective until September 1, 1925, after the filing of this suit. The change from the original enactment was brought about by the codifiers substituting for the word "plaintiff," italicized in the above copy, the word "defendant," but such amendment will not be noticed, for the reason that the original enactment controls in this case. Previous to this enactment in 1919, there was no statute in this state specifically applying to the venue of actions for libel or slander, and the venue of a suit for libel could be placed in any county in which the libel was circulated. Belo & Co. v. Wren, 63 Tex. 686. Such a rule of law as to venue gave to the plaintiff, in a

libel suit against a newspaper or periodical of statewide circulation, such liberty in the matter of choosing the county in which to file suit, as that its exercise not infrequently visited upon the defendant a great and unnecessary hardship. This was an evil the Legislature undoubtedly sought to remedy through the enactment of the present law.

Under the rule of venue in suits for libel, as prescribed by this statute, a plaintiff may institute such a suit in the county in which he resided at the time of the accrual of his cause of action, or he may institute such suit in the county in which he resided at the time the suit was filed, or in the county of the residence of the defendant, and, if more than one defendant, in the county of the residence of one of them, or, if the defendant be a corporation, in the county of its domicile, and can institute such a suit in no other county. In the instant case, the residential status of appellant did not change from the time of the accrual of this cause of action against the publishing company on September 3, 1924, and the date of the filing of this suit in the district court of Dallas county, on August 4, 1925, and for convenience we will refer only to such status at the former date. If appellant did not reside in Dallas county at the time of the accrual of the cause of action, then he did not reside in such county at the time the suit was filed, and the judgment of removal must be sustained, unless the evidence made a prima facie case of a joint cause of action against the publishing company and M. M. Crane.

[1] What is the legal effect of the evidence, as to this issue, under the provisions of this statute? Does it establish the fact that appellant resided in Dallas county at the time of the publication of the alleged libel? The word "reside" is frequently used in two senses, and both uses have found their way into judicial decisions. One use is to restrict its meaning to denote the place of the personal and actual habitation of an individual, without reference to his domicile or permanent residence. The other is less restrictive, and may include not only actual, but constructive, or legal, habitation of an individual. Shattuck v. Maynard, 3 N. H. 123. When used in the restricted sense, it signifies only the place where the individual is actually living, and this may be his permanent home, or it may be at some place where he has been called for reason of business or pleasure, and where he intended to stay for a period of time indefinite in duration. In the latter sense, the use of the word is synonymous with "residence," and an individual is said to reside where he has an established residence, even though there are periods of time he is temporarily absent from his residence. Is the word "resided," used in this statute, synonymous with "residence," or is it used in its more restricted sense to denote only the place where a plain-

tiff was actually living at the time of the accrual of the cause of action? We are of the opinion that the word was used in the former sense, and that the clause in the statute, "in the county in which the plaintiff in such action resided at the time of the accrual of the cause of action," should be given the same meaning as if it read, "in the county of the residence of the plaintiff in any such action at the time of the accrual of the cause of action." We are impelled to this conclusion by reason of the construction of the words "domicile," "residence," and "resided," theretofore given by our courts in other existing venue statutes. In the case of Pearson v. West, 97 Tex. 238, 77 S. W. 944, the Supreme Court used the following language:

"In the twenty-seven exceptions to the general rule there are ten which depend upon the residence or domicile of a party, and of these there are four in which the word 'domicile' is used and six in which the word 'residence' is used to designate the place of venue, showing that the words 'domicile' and 'residence' have been used by the Legislature interchangeably."

An examination of article 1194 and its several subdivisions, of the 1895 statutes, which were in force when this opinion was written, will disclose that the learned judge who wrote that opinion treated the word "residence" and the word "resided" as synonymous, and it is not extending the opinion to add to the words "domicile" and "residence" the word "resided."

In the case of G., C. & S. F. Ry. Co. v. Overton (Tex. Civ. App.) 107 S. W. 71, 74, the word "resided" is clearly given the less restricted meaning. In that case the court construed the word "resided" as it was used in subdivision 25 of article 1995, R. S., which in effect provides that a suit for personal injury against a railroad may be brought either in the county in which the plaintiff resided at the time of the injury, or in the county in which the injury occurred. In that case, the plaintiff had established a fixed residence in Johnson county, but for some time previous to her injury had been living temporarily in another county. She instituted the suit, not in the county in which she was actually residing at the time of her injury, but in the county of her permanent residence, and the court upheld the venue of the suit against the objection of the railroad. This conclusion could only have been reached on the theory that the plaintiff was constructively residing at the time of her injury in the county of her permanent residence.

The reason moving the Legislature, in suits for libel or slander, to make an exception to the general rule of venue in a suit based on libel or slander and compel a defendant to answer such a suit outside of the county of his domicile, and in the county of the residence of the plaintiff, is plain and unmistakable. The

victim of a libel or slander suffers in his good name and reputation. This suffering is more poignant and the injury more severe in the vicinity of his home and among his neighbors than anywhere else. It must therefore have been considered by the Legislature both fitting and just that, whatever vindication an appeal to the courts would give for such wrong, the victim of the wrong should have the right of vindication in the county of his home where he had suffered the maximum of wrong.

In the instant case, the evidence unmistakably establishes the fact that appellant's residence is in Dallas county and that he has no other residence in this state. If he was sued on a debt, not otherwise payable in a county other than Dallas, venue of such suit could not be maintained against his plea of privilege to be sued in Dallas county. Taylor v. Wilson, 99 Tex. 651, 93 S. W. 109.

When the Legislature used the three words "resided," "residence," "domicile," in the statute under review, we must conclude that these words were used in the light of the construction the courts had theretofore given them in venue statutes, which is that they were used interchangeably. Under this use of the word "resided," the undisputed evidence established the fact that plaintiff resided in Dallas county at the time of the accrual of the cause of action, and that he had the statutory privilege of bringing the suit against the American Publishing Company in such county.

[2-4] We cannot agree with appellant in his contention that the undisputed evidence showed the existence of a joint cause of action against the publishing company and M. M. Crane. The undisputed evidence on this issue is that M. M. Crane was elected temporary chairman of the State Democratic Convention on its assemblage, in the city of Austin, September 2, 1924; that on taking the chair he delivered to the delegates of the convention, in accordance with an unbroken custom, what is usually termed the "keynote speech" for the forthcoming campaign of the Democratic Party; that in this speech he uttered the words that form the basis of this suit; that the reporter of the Austin American was present, along with a large number of newspaper men; that the speech was entirely the voluntary utterance of M. M. Crane, and that in no way could he have been influenced to make such utterance by any representative of the publishing company; that the publication of the alleged libelous matter the following morning in appellant's paper was the voluntary act of the publishing company and its representatives; that there was no request for the publication of the speech by M. M. Crane, and no action or conduct of his that could be construed into even a desire

for publication, other than the deliverance of the speech, nor was there any request on the speaker's part that any portion of the speech be not published. The evidence on this issue was undisputed and its truthfulness seemingly accepted by the parties to this suit. Its legal effect was for the court and not the jury.

Under this evidence, the cause of action against M. M. Crane is for the oral utterances alleged to be defamatory to the reputation of appellant, and is a suit for slander. When the words alleged to be slanderous were uttered, the cause of action against Crane became complete. If, without Crane's solicitation or procurement, another should repeat such words, the result would be another cause of action against the person repeating the alleged slanderous utterance, for which Crane could not be made to respond in damages. When the publishing company published and circulated the alleged libelous utterance, another cause of action arose in favor of appellant against the publishing company. This cause of action was for libel, and in some respects different from an action for slander. Under the undisputed evidence in this case, we are of the opinion that Crane could no more be made to respond in damages for the cause of action on the alleged libel, because of the said publication, than he could, in the cause of action on the alleged slander, because of the act of another in voluntarily repeating the alleged slanderous utterances. We believe that, where the publication of a slander, theretofore uttered by a speaker, is occasioned only through the independent act of the publisher, without any active privity or intentional procurement on the part of the speaker, the publisher alone is responsible for the damages resulting from the libelous publication, and the speaker is responsible alone for damages resulting from the oral utterance of the defamatory words. Maytag v. Cummins (C. C. A.) 260 F. 74, 16 A. L. R. 712, and authorities therein cited. We therefore hold that the undisputed evidence failed to make a prima facie case of a joint cause of action existing against the publishing company and M. M. Crane.

The disposition we have made of this case renders it unnecessary to pass upon the appeal filed by M. M. Crane. However, we will state that, under the view taken of this case by the trial court, the decree should have transferred to the district court of Travis county only the case against the publishing company, and we are inclined to believe that is the effect of the decree rendered.

It necessarily follows from the above discussion that in our opinion this cause should be reversed and here rendered in favor of appellant denying the plea of privilege.

Reversed and rendered.